### NEW YORK LIFE INS. CO. v. BAKER.

(Circuit Court of Appeals, Eighth Circuit. November 1, 1897.)

#### No. 903.

1. INSURANCE—FALSE REPRESENTATIONS—WAIVER AND ESTOPPEL.

Where statements in the application are made warranties, and the policy contains no stipulation that a false statement shall render the policy void, false statements merely render the policy voidable at the option of the company; and, upon learning of the falsity of such statements, the company may waive the breach, and insist on performance of the contract by the insured, or it may, by its conduct, estop itself from taking advantage of a known breach.

2. SAME—WAIVER AND ESTOPPEL BY CONDUCT.

Where, after full knowledge of facts rendering a policy voidable at its option, and after the policy had become a death claim, the company continued to treat it as a subsisting claim, and induced plaintiff to take out letters of guardianship of the minor children of insured, in order to complete proofs of loss, and at a later date entered into negotiations to induce plaintiff to settle for less than the face of the policy, during which it first claimed that the policy was void, and retained the premium, and took no steps to repay it for a year after acquiring full knowledge of its alleged right to rescind, such acts amounted to both a waiver and an estoppel in pais. 77 Fed. 550, affirmed.

In Error to the Circuit Court of the United States for the District of Nebraska.

This was a suit on a life insurance policy issued by the New York Life Insurance Company, the plaintiff in error, which was brought by Ida M. Baker, the defendant in error, as guardian of her three minor children, Cecil Baker, De Loyd Baker, and Lamont Baker. The policy sued upon was issued by the aforesaid company on the life of Ward L. Baker, for the benefit of the aforesaid minors, in the sum of $5,000; and the same was executed and delivered on or about July 13, 1893. The insured died on December 22, 1893; having paid one annual premium, in the sum of $180.50. The defendant company answered the complaint, denying all liability on said policy, and pleading substantially the following facts: That, before the issuance of the policy, Ward L. Baker, the insured, made a written application therefor to the defendant company, which application was referred to in the policy, and, by the terms thereof, was expressly made a part of the contract of insurance; that said application thus made a part of the policy contained an agreement on the part of the insured that the

statements and representations contained in said application, together with the statements contained therein which were made to the defendant's medical examiner, should be the basis of the contract between the defendant company and the insured; that the insured thereby warranted' said statements to be full, complete, and true, whether written by his own hand or not; and that such warranty should form a consideration for the policy which might be issued thereon. The defendant company further alleged, in substance, that certain statements contained in said application, which were made by the insured, Ward L. Baker, in response to various questions propounded to him by the defendant company's medical examiner, were false, and that the policy subsequently issued on the faith of said application was, for that reason, utterly void. The questions and answers thereto to which said averments relate were as follows: "Question. Give full particulars of any serious illness you have had since childhood? Answer. Have had none. Question. When where you last confined to the house by illness? Answer. Not since childhood. Question. What is the name and residence of your physician? Answer. Have none. Question. What other .physicians have you consulted? Answer. None." To the foregoing plea the plaintiff below filed a reply wherein it was alleged, in substance, that, by virtue of the company's conduct and dealings with the plaintiff subsequent to the occurrence of the loss, the company was estopped from denying the validity of the policy sued upon, or the plaintiff's right to recover thereon. The case comes to this court for review on a special finding of facts. The facts thus found in the trial court, so far as they have a material bearing on the questions presented for decision, are as follows:

In the latter part of February, or fore part of March, 1893, preceding the issuance of the policy sued upon, Ward L. Baker, the insured, contracted a cold, of the variety usually called the "grippe," which was accompanied with a cough. In consequence thereof, he. was confined to his house, but not to his bed, for a period not exceeding two or three days. · In the early part of March, 1893, he consulted a physician by the name of Dr. Bailey, at Glenville, Neb., at the doctor's office, with regard to such ailment. Dr. Bailey diagnosed Baker's ailment to be the grippe, and during that month prescribed for him on two occasions at the doctor's office, renewing the prescription once or twice. Dr. Bailey did not treat, prescribe for, or consult with said Baker after March 15, 1893. As warm weather came on, Baker's health improved; and after two or three days' confinement to the house he attended regularly to his business until the latter part of September, 1893, from which time he was afflicted with his last sickness. On June 6, 1893, said Ward L. Baker was examined by said Dr. Bailey for admission to the Ancient Order of United Workmen, was reported by him as a fairly-good risk, and was admitted into said order, joining the lodge instituted at his home, at Glenville, Neb. On March 11, 1895, about one year and three months after the insured died, and not before, the defendant company made a written tender to the plaintiff below, Mrs. Ida M. Baker, of the amount of money paid by said Ward L. Baker as the first premium on said policy, with legal interest thereon from the date of said payment to the date of said tender, accompanying said tender with a written statement that, on account of misrepresentations made in procuring said policy, the same had never gone into effect. It was further found by the trial court: That Ida M. Baker is the widow of Ward L. Baker, deceased. That said decedent left a last will and testament, whereby said Ida M. Baker was appointed executrix of his estate, and testamentary guardian of his children.' That said will was duly proved and admitted to probate in the county court for Clay county, Neb., in the month of January, 1894. That during said month Ida M. Baker qualified as executrix of said estate, and has ever since been engaged in administering the same. That by his last will and testament the deceased left some property to Cecil, De Loyd, and Lamont Baker, his minor children, besides what they may be entitled to under the life insurance policy in controversy in this suit. That in the month of March, 1894, the defendant company was told at its offices in the city of New York, and knew, that said Ward L. Baker, deceased, was in May and June, 1893, in a weak condition, and not at all well; that he was suffering from night sweats, and from a cough, and had consulted a physician, and had been prescribed for, in the month of May, and that he was then taking medicine for said ailment; and that the said Ward L. Baker had been sick during the latter

part of the winter and spring of 1893 with the grippe. The trial court also found that on July 28, 1894, Ida M. Baker received from the defendant company a letter in the words and figures following:

"New York Mutual Life Insurance Company, 346-348 Broadway.

"New York, July 25th, 1894.

"Mrs. Ida M. Baker, Glenville, Clay County, Neb.—Dear Madam: Proofs of death and claim under policy No. 550,571, life of your husband, Ward L. Baker, deceased, in favor of children named, who are minors, do not include a certified copy of the letters of their guardianship, issued to you. Please, therefore, forward to the company said certified copy, at your earliest convenience. The proofs of your qualifications as executrix of his will, and the copy of the same, showing you are the testamentary guardian of his children, is not sufficient.

"Very respectfully, yours,                    Dwight Burdge,
                                       "Supt. Policy Claims Dep't."

It further found that no guardian of the persons or estates of the said Cecil, De Loyd, and Lamont Baker had been appointed prior to the receipt of the aforesaid letter; that after the receipt thereof, and on application of Ida M. Baker, to wit, on August 7, 1894, letters of guardianship of said minors, who were then all under the age of 14, were duly issued to her by the county court for Clay county, Neb.; that in reply to said letter the plaintiff below, in the month of August, 1894, mailed to the defendant company, in the city of New York, a certified copy of her letters of guardianship of said minor children, which she had procured to be issued to her as aforesaid; that said certified copy of said letters of guardianship was received by the defendant company in due course of mail; that in the latter part of the month of October, 1894, the defendant company sent an agent from the city of New York to Omaha, in the state of Nebraska, for the purpose of compromising and settling the claim against it on the aforesaid policy, to the end that litigation in regard thereto might be avoided; that said agent of the defendant company, after his arrival in Omaha, had an interview with the duly-authorized attorneys of said plaintiff, and, in the course of said interview, denied that said plaintiff, as guardian of her minor children, or otherwise, had any valid claim against the defendant, and denied that the defendant was under any liability whatsoever by reason of making said policy; that said agent of the defendant company then and there offered to the plaintiff the sum of $1,000 in full settlement of all claims and demands under said policy; that such offer was rejected by the plaintiff on or about the 1st day of December, 1894, whereupon this suit was instituted; that the defendant company never notified the plaintiff, or any other person acting in her behalf, that it elected to treat the contract of insurance as avoided, and never disclaimed or denied its liability thereon, except as last above stated, in the month of October, 1894; and that it did not tender to the plaintiff the premium which had been paid on said policy by said Ward L. Baker until March 11, 1895. In view of the aforesaid facts, the trial court rendered a judgment in favor of the plaintiff below. 77 Fed. 550. To reverse said judgment, the record has been removed to this court by a writ of error.

James H. McIntosh, for plaintiff in error.

H. C. Brome (Arthur H. Burnett, on the brief), for defendant in error.

Before BREWER, Circuit Justice, and SANBORN and THAYER, Circuit Judges.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

It is contended in behalf of the insurance company that because of the statements made to its medical examiner by Ward L. Baker, the insured, to the effect that he had not been confined to his house by illness since childhood, and had no physician, and had not consulted a physician, the policy sued upon never took effect as a contract, but

was at the outset, and so remained, utterly void and of no effect. As a corollary from this proposition, it is strenuously insisted that the doctrine of estoppel or waiver, which was invoked by the plaintiff below, has no application to the case, and that the defendant company may insist upon the invalidity of the contract, notwithstanding the fact that it treated the policy as a subsisting obligation for months after the company was advised of the facts which rendered the policy void, and in the meantime not only retained the premium which had been paid, but put the plaintiff to some trouble and expense in taking out letters of guardianship, on the pretense that such action on her part was necessary to complete the proofs of loss, and duly comply with the provisions of the policy. Before considering the propositions last stated, it will be well to say that the case, as presented by the record, does not impress us with the belief that the deceased, Ward L. Baker, intentionally perpetrated a fraud on the insurer. It will be observed that the question immediately preceding the one in which he was asked, "When were you last confined to your house by illness?" required the insured to give full particulars of any *serious* illness he had had since childhood. In view of the juxtaposition of these questions, it would be very natural for any one to infer that by the term "illness," as used in both questions, some serious illness was intended. Therefore it is entirely probable that when the insured stated, in effect, that he had not been confined to his house by illness since childhood, he meant that he had not been so confined by any serious illness, and did not then regard the sickness which had confined him to his house for two or three days in March, 1893, as of a serious character. The answers made by the insured to the two other questions of which complaint is made are also susceptible of a reasonable explanation, consistent with the utmost good faith on the part of the insured. It is most probable, we think, that the insured construed the first of these questions to mean who was his regular family physician, and that he answered, with substantial accuracy, that he had none. It is also a reasonable inference that he construed the other question, which was asked in the same connection, to mean what other physician besides his regular family physician he had consulted for any illness or ailment that was of a serious nature, and that he answered truthfully, according to his understanding of the question, that he had consulted no one; being of the opinion at the time that the ailment for which he had consulted Dr. Bailey a few times in the month of March, 1893, was not of a serious character. This view of the case, that the deceased had practically recovered from the illness with which he was afflicted in March, before the policy in suit was taken out, and that he did not regard it as of any importance, or intend to deceive the insurer, is very much strengthened by the fact that the defendant company's medical examiner on June 24, 1893, certified, after a personal examination of the insured, that he was a "first-class risk," and by the further fact that he was approved for insurance in the Ancient Order of United Workmen on June 6, 1893, by the same Dr. Bailey who had attended or prescribed for him in March, 1893, when he was supposed to be afflicted with the grippe.

It is not necessary, however, to decide on the present occasion, and we do not decide, that the interrogatories and answers ought to be construed in the manner above indicated, and that in view of such construction the findings made by the trial court fail to show that any false statements were made by the insured.   For the purposes of this decision, it may be conceded that two statements made by the insured in his application—the one, that he had not been confined to his house by illness since childhood, and the other, that he had not consulted a physician—were technically untrue.   Nevertheless, we hold that the conduct of the defendant company after it had discovered in what respects these two statements were untrue amounted to a waiver of its right to refuse payment on that ground.   We fully agree with the view of the learned trial judge that the falsity of the statements complained of did not render the policy void, in the sense that an illegal contract, or one that cannot be performed, is void. The falsity of the statements complained of merely rendered the contract voidable at the election of the insurer.   The policy itself contained a provision that it should be incontestable after it had been in force for one whole year, if it should become a death claim, and that the company would not contest its payment, provided the conditions of the policy as to the payment of premiums had been observed. This provision was an express declaration by the company that the policy, though originally vitiated by fraud or untrue statements, should nevertheless become valid after the lapse of one year; and it is entirely inconsistent with the claim now preferred by the defendant company, that a false statement contained in the application was so far fatal that the contract never could become binding or operative.   Moreover, the policy in suit contains no stipulation, such as is sometimes found in such policies, to the effect that a false statement made by the insured in his application should render the contract void.   We conclude, therefore, that although the statements contained in the application were warranties, in such sense that the materiality of the statements cannot be contested, yet the falsity of a statement did not render the policy void ab initio, and that it was competent for the defendant company to waive a known breach of warranty, and insist upon a performance of the contract by the insured, or to estop itself by its conduct from taking advantage of a known breach of warranty in a suit upon the policy.   Selby v. Insurance Co., 67 Fed. 490; Frost v. Insurance Co., 5 Denio, 154; May, Ins. § 497.

We are also of opinion that the trial court reached a correct conclusion in holding that the conduct of the defendant company amounted to a waiver of the defense pleaded in its answer, and estopped it from availing itself of such defense.   As early as the month of March, 1894, it became aware of all the facts which rendered the policy voidable at its election; but, notwithstanding such knowledge, it continued to treat the same as a subsisting obligation for more than seven months thereafter, and in the meantime dealt with the plaintiff below upon that basis.   At the instance of the defendant company the plaintiff was induced to take out letters of guardianship to complete the proofs of loss, which doubtless put her to consider-

able trouble and expense. At a later period the defendant entered into negotiations with a view of inducing her to settle the claim for less than the face of the policy, and it was during the course of such negotiations that the claim was first advanced that the policy was void. In the meantime the premium was retained, and no offer was made to repay it until March, 1895,—a year after the company acquired full knowledge of its alleged right to rescind. We think that the acts in question amounted both to a waiver and an estoppel in pais. Good faith and fair dealing required the company to be more prompt in asserting its right to treat the policy as void, and in taking the necessary steps to rescind the contract. Moreover, after it became aware that the policy was invalid, it was not entitled to exact from the plaintiff a technical compliance with the provisions of the policy relative to proofs of loss, which would involve her in trouble and expense, unless, on its part, it had resolved to pay the loss when such proofs were supplied. To this effect are the authorities: Titus v. Insurance Co., 81 N. Y. 410, 419; Insurance Co. v. Norton, 96 U. S. 234, 241; Gray v. Association, 111 Ind. 531, 11 N. E. 477; Hollis v. Insurance Co., 65 Iowa, 454, 459, 21 N. W. 774; Society v. Hiett's Adm'r, 19 U. S. App. 173, 185, 7 C. C. A. 359, and 58 Fed. 541; Webster v. Insurance Co., 36 Wis. 67; Marthinson v. Insurance Co., 64 Mich. 372, 31 N. W. 291. The judgment of the circuit court is therefore affirmed.