## FIREMAN'S FUND INS. CO. v. McGREEVY.

(Circuit Court of Appeals, Eighth Circuit. November 3, 1902.)

No. 1,681.

1. INSURANCE AGENT—POLICY ISSUED TO HIMSELF—FRAUDULENT CONCEALMENT—MATERIALITY—WITHDRAWAL OF ISSUE FROM JURY.

An insurance agent issued a policy to himself on a warehouse purchased by him a few days before for $500. He reported the insurance to the company with the statement that the building was worth from $3,500 to $4,000, but did not disclose his recent purchase, nor the fact that the building had been erected as a creamery, and had been put to various uses, none of which proved profitable. The company's instructions to its agent were to consider risks with reference to their moral hazard, and not to issue a policy for an amount the insured would rather have than the risk covered; and, if a building was badly located, too large, in a business not adapted to it, not to write it. *Held*, in an action on a policy after loss, that the materiality of the

agent's concealment was so obvious as to be decided as a matter of law, and it was error to submit that question to the jury.

**2. SAME—EFFECT.**

Where the court submits to the jury an issue which it itself should have decided, such error will necessitate a reversal, even though another issue was submitted, upon which the jury might have rendered the general verdict they did.

**3. SAME—WAIVER BY COMPANY.**

An insurance agent issued a fire policy to himself, concealing the actual value and condition of the property. After loss the company's agent, when visiting him to effect an adjustment, learned of the price paid by the insured, but nevertheless endeavored to reach a compromise. He induced insured to secure a carpenter's estimate of the cost of rebuilding, for which insured gave the carpenter $5 worth of damaged grain. Failing to secure a compromise, the adjusting agent said to insured that, if he did not arbitrate, the company would fight him, and take him into the United States courts. After the adjusting agent's departure, the company learned of the insured's concealment, denied liability on the policy, and tendered back the premium. *Held*, that the company had not waived the defense of fraudulent concealment.

In Error to the Circuit Court of the United States for the District of Nebraska.

Bernard McGreevy, the defendant in error (plaintiff below), was, in June and July, 1897, and before and after that time, the local agent, at the city of O'Neill, Holt county, Neb., of the Fireman's Fund Insurance Company, of San Francisco, Cal., the plaintiff in error (defendant below). On July 2, 1897, upon one of the executed blanks furnished him by said defendant, he made out, and as such agent countersigned, a policy of insurance, by the terms of which the defendant company, in consideration of the sum of $75 premium, insured said plaintiff for one year from noon of that day against all direct loss or damage by fire to his two-story frame, brick foundation, shingle-roof warehouse, situate in said city, on a described parcel of land of the plaintiff, to the amount of $3,000; and on the same day transmitted said policy by mail for approval to the assistant manager of said defendant at Chicago, Ill., together with his daily report as such agent, describing said insurance, and stating that said warehouse was built about 1883, of wood, and. was of the cash value of $3,500 to $4,000. Thereupon said policy of insurance was, on July 3, 1897, approved by said assistant manager, and returned to the plaintiff, who paid therefor to defendant the sum of $63.75, being the amount of said premium of $75 after deducting therefrom 15 per cent. thereof as plaintiff's commission as such agent for effecting the insurance. Said warehouse building had been erected in 1883 as a creamery. That business proving unprofitable, the appliances were removed after two or three years, and it was changed and used for a time as a hotel. That use was also abandoned, and shortly before June, 1897, it had been used for storing chicory and other commodities. In the meantime, prior to 1890, the title to the property became vested in the Holt County Bank to satisfy a debt owing it by the creamery company, and about 1893 became vested in Oscar O. Snyder, as receiver of said bank, which had become insolvent. For more than two years said receiver had offered and endeavored to sell said building and the land on which it was situated—about one-half acre— for the sum of $600, and was unable to make such sale until June, 1897, when he sold and conveyed the same to plaintiff for the sum of $500, with plaintiff's agreement to pay the outstanding taxes against the same, which were less than $100. In a book of instructions issued by defendant to its agents, a copy of which had been furnished plaintiff when first appointed, defendant had directed that: "All risks should be considered with reference to their moral hazard. Never issue a policy for an amount that the insured would rather have than the risk covered. If a building is badly located, too large, in a business not adapted to it, don't write it. Don't cover large hotels or factory risks built in expectation of a population that has not

materialized. If a risk is an elephant on the hands of its owner, let those cover it who write menageries. We don't." Agents were also directed to decline to insure all unsalable and unprofitable property. The plaintiff, when he sought the approval of defendant's assistant manager of said policy, did not inform him or defendant company anything about the use or occupation of said building, or about his purchase of the same, or the price he had paid therefor, or at which it had previously been offered for sale by the receiver; and defendant company had no information of any such matters before the destruction of said building by fire. After plaintiff's purchase of the building, it was used as a grain warehouse, and grain was stored in it when it was burned on December 18, 1897. A few days after the fire, Frank D. Lyon, an agent of defendant, came to O'Neill to examine and adjust the loss, and while there ascertained the price which plaintiff had paid for the property. Offers of settlement were made on each side, and not accepted; and at the suggestion of said Lyon plaintiff obtained from a carpenter whom they met an approximate estimate of the cost of replacing the building, for which service plaintiff gave the carpenter grain from the burned building of the estimated value of $5. Afterwards, and not later than January 4, 1898, said Lyon having learned the contents of the daily report which plaintiff had sent to defendant's assistant manager when he sent said policy to him for approval, on behalf of defendant and by direction of its attorney notified said plaintiff that defendant denied all liability on said policy because of plaintiff's fraud and suppression of facts when the policy was issued; and on behalf of defendant tendered to plaintiff the sum of $66.23, being the sum paid by plaintiff for the policy and interest thereon until the day of such tender. After formal proofs of loss, this action was begun in the district court of Holt county, Neb., and was thereafter properly removed to the circuit court of the United States for the district of Nebraska; and upon trial a verdict was rendered February 19, 1901, in favor of the plaintiff for $3,656.25. upon which judgment in favor of plaintiff was entered September 21, 1901. for $3,806.26 and costs.

W. W. Morsman, for plaintiff in error.

J. B. Sheean and M. F. Harrington, for defendant in error.

Before SANBORN and THAYER, Circuit Judges, and LOCHREN, District Judge.

LOCHREN, District Judge, after stating the case as above, delivered the opinion of the court.

In issuing the policy of insurance to himself, the plaintiff not only acted on his own behalf, but also acted and assumed to act as the agent of the defendant insurance company. He did not send to the defendant an application for insurance to be acted on through some other agent who might investigate the risk, but made out the policy himself as defendant's agent, and sent it for approval to defendant's manager, accompanied by his daily report of that risk; on which report he expected the manager to act, as he did act, in approving the risk. And plaintiff countersigned the policy as defendant's agent, and charged and was allowed his commission of 15 per cent. of the premium for effecting the insurance as defendant's agent. The court therefore correctly instructed the jury that as such agent the duty devolved on the plaintiff to disclose to his principal, when applying for insurance, or for the approval of the insurance policy, such facts as he possessed a knowledge of, which he had reason to believe, if brought to the attention and knowledge of the insurance company, would influence them, or might influence them, not to approve the policy upon the property in question. An agent may deal directly

with his principal when the facts are fully disclosed, and the agent acts in good faith, taking no advantage of his situation. But the strictest of faith is required. Mechem, Ag. § 466. But the court further charged the jury as follows:

"Then, on the other hand, if you find that the plaintiff, knowing of the various facts, failed to communicate them to the defendant, determine whether or not they were of such a material nature as that, under the instructions which the defendant had given the plaintiff with regard to not insuring property of a certain kind, whether or not the fact that this property had been offered in the market for a period of time at $600 and no purchasers, and the plaintiff had bought it, together with the land upon which it stood, a few days before, for $500, and all of those facts with which he was familiar, and which were alleged in the answer to have been concealed, whether or not had he disclosed them to the insurance company, whether or not they were of such a material character that the insurance company would have refused to have issued a policy of insurance in this case. If they were of that character, it was his duty to disclose them to his principal, he being the agent of the insurance company, and dealing with the insurance company in his own behalf."

This portion of the charge was excepted to, and is erroneous. It assumed to submit to the jury, as matters which they were to pass upon and determine, facts about which there was actually no dispute or question. The plaintiff had resided in the city and was engaged in active business there for many years, and there was no pretense that he did not know that the building had always been unprofitable. He certainly knew that he had just purchased it, with the land, for $500. From the instructions which he had as agent of defendant, he must have known that the defendant company would regard these matters which he did not disclose, but knowingly concealed, as material to the risk; and they were plainly material, and the jury should have been instructed that they were material. The defendant had instructed the plaintiff, as its agent, to "never issue a policy for an amount that the insured would rather have than the risk covered"; and it seems reasonably certain that it would not, had it been informed of the fact, have insured for $3,000 a building which plaintiff had just bought, with the ground, for $500. The facts concealed, had they been disclosed, would have contradicted his representation that the value of the building was $3,500 to $4,000. The concealment was fraudulent, and knowingly such. In Druse v. Wheeler, 26 Mich. 189, 196, the court says:

"And when all the evidence upon the point on both sides tends clearly to prove, and if true does prove, a fact, and there is none to cast a doubt upon it, such fact may, and generally should, be assumed as proved; and the jury should be told that there is no evidence from which they can find against the fact as proved. And under such a state of proofs, a charge which, in effect, tells the jury that it is competent for them to find either way,—for or against the existence of the fact so proved,—is erroneous, as it assumes that there is evidence in the case tending as well to disprove such fact as to prove it."

See, also, Gavigan v. Evans, 45 Mich. 597, 8 N. W. 545; Seligman v. Ten Eyck's Estate, 49 Mich. 104, 109, 13 N. W. 377.

Where the evidence leaves any doubt as to the existence of a fact, the matter should be left to the jury; but where it is established by all the evidence on both sides the jury cannot be permitted to find

to the contrary. And, in respect to concealments, the materiality of matter concealed may, as in this case, be so apparent that it should not be left open to a jury to find it not material.

For this error the judgment must be reversed, even though another issue, which was submitted to the jury, and upon which they may have found for the plaintiff, was properly submitted to them. Where several issues are left to a jury, and in respect to any one of them error is committed in the charge of the court, a general verdict cannot be sustained, as it may be that the jury founded their verdict upon the very issue erroneously submitted to them. Maryland v. Baldwin, 112 U. S. 490, 493, 5 Sup. Ct. 278, 28 L. Ed. 822; Coal Co. v. Johnson, 56 Fed. 810, 6 C. C. A. 148, 151; Railway Co. v. Needham, 11 C. C. A. 56, 63 Fed. 107, 113, 25 L. R. A. 833.

But, in view of the evidence in this case, the court also erred in submitting to the jury the other issue in the case, which was whether the adjusting agent, Lyon, with knowledge of the representations and concealments of the plaintiff in procuring the insurance, satisfied the jury by his conduct and actions in his transactions with plaintiff after the fire that he intended to and did ratify and accept the policy as a valid and binding policy against the company. Exceptions were duly taken to those parts of the charge which submitted this issue to the jury. It is true that the misrepresentations and concealments of the plaintiff in obtaining the policy while acting in the matter as defendant's agent did not render the policy void, but only voidable at the election of the defendant; and such election, if to rescind the policy, should be exercised, and plaintiff notified thereof, within a reasonable time after the fraud was discovered by the defendant. The defendant, with full knowledge of the facts, might waive the objection, either expressly or by acts evincing an intention to treat the policy as valid; or it might, after such knowledge, estop itself from urging that defense by requiring or inducing the plaintiff to take such action or incur such expenses, on defendant's implied admission that it was still bound by the policy, as would make it inequitable to allow the defendant afterwards to interpose that defense. In this case there was no evidence of any knowledge on the part of defendant company of the misrepresentations or concealments by which plaintiff obtained the policy at the time Lyon was sent to O'Neill, after the fire, to examine and adjust the loss. So far from there being any evidence that Lyon was authorized to waive the defense of plaintiff's fraud, the circumstances make it certain that when he was sent there no such fraud was contemplated or suspected by the defendant. That Lyon did not assume or intend to waive any defense is shown by plaintiff's own testimony that Lyon closed the discussion, when plaintiff refused to arbitrate, by threat of litigation, saying: " 'If you do not, we will fight you,—bring you into the United States court, or the United States supreme court.' 'All right,' says I, 'go ahead.' So that ended it." Lyon learned, after he reached O'Neill, of the price which plaintiff had paid for the property. Notwithstanding that, he conferred with plaintiff, without result, as to the method or terms upon which the claim might be settled, and litigation avoided. Attempts to settle controversies are commendable, and not to be discouraged. The

conference lasted a part of one day, and from it no element of estoppel arose in favor of the plaintiff. The trifling amount of scorched grain which plaintiff gave the carpenter for a loose estimate of the cost of rebuilding was to obtain some basis for discussing one of the mooted theories of settlement. It was proper on the part of Lyon that while there he should inform himself as to the views and disposition of the plaintiff, that the defendant might act understandingly when informed of all the facts. And the defendant company, as soon as it had full information, promptly rescinded the policy, and tendered back to the plaintiff the money it had received from him, with interest.

The case is unlike that of Insurance Co. v. Baker, 27 C. C. A. 658, 83 Fed. 647. There it was very doubtful whether the representations could be regarded as fraudulent or untrue; and the insurance company became aware of all the facts in March, 1894, but continued to treat the policy as a subsisting obligation, dealing with the plaintiff on that basis for more than seven months thereafter. At its instance the plaintiff was induced, at considerable expense and trouble, to take out letters of guardianship, and to complete proofs of loss. Later it entered into negotiations with her for a reduction of her claim, in the course of which it first advanced the claim that the policy was void. No offer to repay the premium was made until March, 1895, a year after all the facts were known to the company, which was properly held to be estopped by its conduct. In this case there is no ground upon which the verdict in favor of the plaintiff can be supported.

The judgment is reversed, and the cause remanded, with directions to grant a new trial.