# Indiana National Life Insurance Company *v.* McGinnis.

[No. 22,372.   Filed March 28, 1913.   Rehearing denied June 24, 1913.]

1. INSURANCE.—*Life Insurance.*—*Nonpayment of Premiums.*—*Answer.*—*Sufficiency of Reply.*—A paragraph of reply alleging that payment had been offered defendant by tendering and mailing a check which the defendant refused to accept, was sufficient in an action on a life policy, to avoid an answer alleging failure to pay a premium, where defendant's refusal to accept the payment was based on its denial of liability on the sole ground that the policy had been cancelled by agreement between the insured and the defendant.  p. 15.

2. INSURANCE.—*Life Insurance.*—*Limitations in Policies.*—A provision in a contract of insurance limiting the time in which the insurer may take advantage of certain facts that might otherwise constitute a good defense to its liability on such contract, is valid and precludes every defense to the policy other than the defenses excepted in the provision itself.  p. 16.

3. INSURANCE.—*Life Insurance.*—*Incontestable Clause.*—*Effect as Against Fraud of Applicant.*—A provision in a life policy that, after one year from date of issue, it should be incontestable, if the premiums had been duly paid, precludes a defense based on fraudulent representations in the application, where the insurer fails to make the defense or to take affirmative action within the year.  p. 16.

4. INSURANCE.—*Life Insurance.*—*Interest of Beneficiary.*—*Cancellation of Policy.*—*Effect.*—Although a life insurance policy provides for the changing of the beneficiary by the insured at any time by written notice to the company at its head office, the beneficiary has an interest in the policy, which, while subject to be defeated by the insured's act in changing the beneficiary, can be defeated only in the manner prescribed, so that an agreement, to which the beneficiary is not a party, for the cancellation of the policy, cannot affect the rights of the beneficiary therein. (*Eagle* v. *New York Life Ins. Co.* [1911], 48 Ind. App. 284, distinguished.)  pp. 18, 21.

5. INSURANCE.—*Life Insurance.*—*Interest of Beneficiary.*—The beneficiary in an ordinary life insurance policy, in which a change of beneficiary is not authorized, has an absolute, vested interest in the policy from the date of issuance, delivery and acceptance.  p. 21.

6. INSURANCE.—*Life Insurance.*—*Change of Beneficiary.*—Where the right to change the beneficiary in a policy of insurance is

provided for, such right must be exercised specifically in the manner provided.   p. 21.

From Superior Court of Marion County (78,146) ; *Vinson Carter,* Judge.

Action by Melissa McGinnis against the Indiana National Life Insurance Company.   From a judgment for plaintiff, the defendant appeals.   (Transferred from the Appellate Court under §1394 Burns 1908, Acts 1901 p. 565.)  *Affirmed.*

*Ulric Z. Wiley* and *Arthur H. Jones,* for appellant.

*Morton C. Embree, Harvey Harmon, Oscar L. Pond* and *Lucius C. Embree,* for appellee.

SPENCER, J.—This suit was brought in June, 1909, to recover upon a life insurance contract issued on December 9, 1907, to John R. McGinnis of Gibson County, Indiana, and payable, $3,000 to appellee, the mother of the insured, and $2,000 to Emily S. McGinnis, the wife of the insured.   John R. McGinnis died in Colorado on January 16, 1909.

The contract or policy in suit contained, among others, the following provisions: ''Incontestability.   After one year from date of issue this Policy shall be incontestable if the premiums have been duly paid.''  ''The insured may at any time during the continuance of this Policy, provided the policy is not then assigned, and subject to the rules of this company regarding assignments and beneficiaries, change the beneficiary or beneficiaries by written notice to the Company, at its Head Office; such change to take effect on the endorsement of the same on the Policy by the Company.''  In answer to appellee's complaint seeking to recover on this policy, the appellant set up an affirmative defense in seven paragraphs, to the first, third, fourth and sixth of which demurrers were sustained.   These rulings are here assigned as errors together with the trial court's action in overruling appellant's demurrer to the amended second paragraph of appellee's reply to appellant's fifth paragraph of answer.

The first paragraph of appellant's answer admitted the issuance and delivery of the policy sued on and the death of the insured but denied that appellant was liable on such policy. It was alleged that by mutual agreement between appellant and the insured the contract had been cancelled prior to his death by an instrument in writing under date of November 30, 1908, which was executed by the insured in consideration of the sum of $140.45 paid to him by appellant. It was also alleged that certain answers made by insured in his application for insurance were false and made for the purpose of having the contract of insurance issued fraudulently; that as soon as appellant learned such facts, it located the insured at a sanitarium in Colorado and there paid him the named consideration to release it from liability upon said contract. That insured in making his application for insurance had stated that he was in good health; that he had never had any of certain enumerated diseases; that he never used intoxicating liquors; that he did not use tobacco to excess; that all of these answers were false and fraudulent; that at the time of making said answers McGinnis was not in good health but had consumption and knew it; that he was addicted to the use of intoxicating liquors to the extent that he frequently became intoxicated; that he was an habitual user of tobacco to excess so that its use had impaired his health; that his application contained the following clause: "On behalf of myself, and of any person who shall have or claim any interest in any policy that may be issued under this application, I hereby declare and agree that all the foregoing statements and answers, together with those contained in the declarations to the Indiana National Life Insurance Company's medical examiner are warranted to be full, complete and true, and they are offered to the company as a consideration for, and as a basis of, the contract with said Company, under any policy issued under this application, which, if issued, I hereby agree to accept. * * * That no liability

on the part of said Company shall arise until a policy shall be issued, and delivered to me, nor until the first premium thereon shall be actually paid, while I am in good health.''

The third paragraph of answer avers the questions and answers set out in the first, the part of the application for insurance in which the insured certified that his answers were correctly recorded by the medical examiner and that they were true, and his warranty as to all statements and answers made by him; that the application was duly executed and made a part of the policy; that appellant relied upon the warranties, and that because of the fraud therein said contract was void.

The fourth paragraph of answer asserts in addition to the warranties alleged in the first and third, the alleged false and fraudulent representations of the insured, the return to him of the premium he had paid in consideration of executing the release to appellant, said release being as follows: ''This is to certify that I have this day received from the Indiana National Life Insurance Company, of Indianapolis, Indiana, the sum of One Hundred Forty and 45-100 Dollars ($140.45) which is the amount of my first annual premium together with six per cent. (6 per cent.) interest thereon, on policy No. 2931, issued to me by said Company December 9, 1907. I hereby accept the above amount in full satisfaction of said policy, and release said company from further obligation upon aforesaid policy. In witness whereof, I hereunto set my hand, this 30th day of November, 1908, at Y. M. C. A. Farm, Edgewater, Colo. John R. McGinnis.''

The sixth paragraph of answer, in addition to the averments of the first as to answers to questions in the medical examination, warranties, etc., alleges fraud based upon answers to certain other questions and that prior to the making of said application for insurance the insured was afflicted with a certain venereal disease and falsely and fraudulently answered that he was not so afflicted and did

so knowingly; that appellant was thereby induced to issue to him the contract of insurance.

The fifth paragraph of answer pleads the failure to pay the second annual premium, due on said policy on December 9, 1908. The amended second paragraph of reply to this paragraph of answer alleges that the beneficiaries in said policy and the insured through an agent at Princeton, Indiana, made an offer to pay said premium due on said policy by tendering a check, which was good, in compliance with a request of the notice of the company to the insured to "make all checks payable to the company", by mailing the check to the company; that it was received and returned to the agent with a notice to him that the policy had been cancelled, and enclosing to him a copy of the alleged concellation, and requesting such alleged agent to return the policy to the company.

To reverse the lower court by this appeal, appellant insists that the several paragraphs of answer to which demurrers were sustained, were sufficient to constitute a good defense, and that appellee's amended second paragraph of reply to the fifth paragraph of answer does not state facts sufficient to avoid said paragraph; that under the terms of the insurance contract the application for insurance by the insured, with his answers to the questions and the medical examination, were warranties and appellant had the right to rely thereon; that the answers as made by the insured were made knowing they were false and with fraudulent intent; that the contract of insurance was legally cancelled and the liability of the appellant terminated by the agreement between the insured and appellant.

Appellee, to sustain the rulings and judgment, contends that the contract of insurance was executed, delivered and accepted on December 7, 1907; that it matured by the death of the insured on January 16, 1909; that such contract specifically provided that "after one year from date of issue this policy shall be incontestable if the premiums have

been duly paid''; that the premiums were duly paid or payment duly tendered; that the defense of breach of warranty was attempted after June 16, 1909, and in view of the incontestable clause comes too late; that first, third, fourth and sixth paragraphs of appellant's answer are, therefore, each fatally defective for the reason that none of them states facts sufficient to avoid the effect of the incontestable clause; also that the first and fourth paragraphs of answer are bad because they are based upon an alleged cancellation of the insurance contract by the insured and the appellant without the knowledge or consent of appellee; that as such beneficiary in such insurance contract appellee had such an interest therein, at the time of its execution, delivery, and acceptance, as could be affected by the acts, statements or admissions of the insured and appellant only in the manner as therein specifically provided; that the amended second paragraph of reply to the fifth paragraph of answer was sufficient to avoid such answer because the fifth paragraph of answer charged the nonpayment of the second annual premium on such insurance contract and the challenged reply thereto asserts the delivery to appellant of a check drawn upon a bank at Princeton, Indiana, by an authorized agent of the appellee and the insured, which check was for the full amount of such premium and was payable to appellant; that there were funds in the bank, on which the check was drawn, to the credit of the drawer of the same sufficient to pay it in full upon presentation of the same; that appellant did not decline or refuse to accept the payment as tendered because of the form thereof, but returned such check to the agent with the declaration that the insurance contract had been cancelled by an agreement between the appellant and the insured which was in writing and a copy thereof was transmitted to such agent with a request that he deliver the policy to the appellant; that the demurrer to each amended paragraph of reply was therefore properly overruled.

We cannot conceive that it can be seriously contended that said paragraph of reply was not sufficient to avoid the answer of nonpayment of premiums, especially in view of the fact that the appellant denied all liability on the contract of insurance on the sole ground that the same had been cancelled by the agreement between the insured and the insurer, to which agreement appellee was in no way a party; and where it followed the denial of liability with a demand that the policy be returned. The court committed no error in overruling the demurrer to this paragraph of reply.

The most difficult questions here presented are resolvable into the following: (1) Does the incontestable clause preclude the company from asserting as a defense to its liability, the charge of false and fraudulent answers of the insured, the warranties in the contract, the mutual cancellation of the policy by the insurer and the insured without the knowledge of the beneficiary for a cash consideration paid by the company to the insured, where the answer asserting such defense is filed more than one year after the execution, delivery and acceptance of the contract? (2) Had the beneficiary, upon the execution, delivery and acceptance of this policy, such an interest therein, either vested, absolute, defeasible, indefeasible, qualified, limited or otherwise, that her interest cannot be taken from her without her knowledge or consent by an agreement cancelling the policy, made between the insurer and the insured, to which she is not a party where the policy contains this clause as to the change of beneficiary: "The insured may at any time during the continuance of this policy, provided the policy is not then assigned, and subject to the rules of this company regarding agreements and beneficiaries, change the beneficiary or beneficiaries by written notice to the company, at its Head Office; such change to take effect on the endorsement of the same on the policy by the Company?" In other words, where the terms of the contract specifically provide for the

change of beneficiary by compliance with certain conditions, can the appellee's interest in the policy, whatever it may be termed, be lost to her by an agreement to cancel made by the insurer and the insured, to which agreement she is in no sense a party? .

We shall endeavor to consider these questions in the order stated. The record discloses that this action was commenced on June 16, 1909, more than one year and six months after the execution of the policy. It seems to be a well-

2. recognized principle of insurance law that a provision in a contract of insurance limiting the time in which the insurer may take advantage of certain facts that might otherwise constitute a good defense to its liability on such contract, is valid and precludes every defense to the policy other than the defenses excepted in the provision itself. It also seems to be generally held that such a clause precludes the defense of fraud, as well as other defenses, and that it is not invalid on the theory that it is against public policy, provided the time in which the defenses must be made is not unreasonably short. An examination

3. of the following cases will show that the holding of the courts of this country has been, almost universally, that every defense to a policy of insurance embraced within the terms of the "incontestable clause" is completely lost to the insurer if it fails to make the defense or takes affirmative action within the time limited by the policy. *Kline* v. *National Benefit Assn.* (1887), 111 Ind. 462, 11 N. E. 620, 60 Am. Rep. 703; *Federal Life Ins. Co.* v. *Kerr* (1910), 173 Ind. 613, 89 N. E. 398, 91 N. E. 230; *Court of Honor* v. *Hutchens* (1909), 43 Ind. App. 321, 82 N. E. 89; *Peoples Mut. Ben. Soc.* v. *Templeton* (1896), 16 Ind. App. 126, 44 N. E. 809; *Wright* v. *Mutual Ben. Life Assn.* (1890), 118 N. Y. 237, 23 N. E. 186, 6 L. R. A. 731, 16 Am. St. 749; *Clement* v. *New York Life Ins. Co.* (1898), 101 Tenn. 22, 46 S. W. 561, 42 L. R. A. 247, 70 Am. St. 650; *Reagan* v. *Union Mut. Life Ins. Co.* (1905), 189 Mass.

555, 76 N. E. 217, 2 L. R. A. (N. S.) 821, 109 Am. St. 659, 4 Ann. Cas. 362; *Goodwin* v. *Provident Sav., etc., Assn.* (1896), 97 Iowa 226, 66 N. W. 157, 59 Am. St. 411, 32 L. R. A. 473; *Murray* v. *State Mut. Life Ins. Co.* (1901), 22 R. I. 524, 48 Atl. 800, 53 L. R. A. 742; *Royal Circle* v. *Achterrath* (1903), 204 Ill. 549, 68 N. E. 492, 63 L. R. A. 452, 98 Am. St. 224; *Mutual, etc., Assn.* v. *Austin* (1905), 142 Fed. 398, 73 C. C. A. 498, 6 L. R. A. (N. S.) 1064; *Massachusetts Ben. Life Assn.* v. *Robinson* (1898), 104 Ga. 256, 30 S. E. 918, 42 L. R. A. 261; *Northwestern Life Ins. Co.* v. *Montgomery* (1902), 116 Ga. 799, 43 S. E. 79; *New York Life Ins. Co.* v. *Baker* (1897), 83 Fed. 647, 27 C. C. A. 658; *Kansas Mut. Life Ins. Co.* v. *Whitehead* (1906), 123 Ky. 21, 93 S. W. 609, 13 Ann. Cas. 301; *Williams* v. *St. Louis Life Ins. Co.* (1905), 189 Mo. 70, 87 S. W. 499; *Teeter* v. *United Life Ins. Assn.* (1899), 159 N. Y. 411, 54 N. E. 72; *Thompson* v. *Fidelity Mut. Life Ins. Co.* (1906), 116 Tenn. 557, 92 S. W. 1098, 6 L. R. A. (N. S.) 1039, 115 Am. St. 823; *Patterson* v. *Natural, etc., Life Ins. Co.* (1898), 100 Wis. 118, 75 N. W. 980, 69 Am. St. 899, 42 L. R. A. 253. We note that with great earnestness the appellant contends that "false and fraudulent representations of an applicant for life insurance, which are made warranties, will defeat recovery," but it must not be overlooked that there is no charge of fraud against the appellee herein, except through that part of the application in which it is provided that the insured for "any person claiming any interest in the policy" warranted all of his statements and answers to be true and also that the effort to plead this is made after the limitation provided in the contract, which limitation was certainly an inducement held out by the company to augment the sale of its contract. The incontestable clause is construed by us to be binding upon the appellant and to mean just what it says, that "after one year from the date of issue, this policy *shall* be incontestable if the premiums have been duly paid."

The next question for consideration is, What, if any, interest did appellee, as beneficiary, take or have in this policy at the time of its issuance, delivery and acceptance, and if she had any interest therein, how was it disposed of? At the threshold of this branch of the case we feel that as here presented this is a new question in this jurisdiction and in so saying we are not unmindful of the many cases so ably presented by the appellant on this issue, but we cannot concur in the expression: ''The law, as it has been declared, will have to be changed, and the authorities overruled before any other conclusion can be reached.'' And we might here say that we quite agree with appellant in its expression that ''the abandonment and rescission of a contract of life insurance, by mutual agreement between the insurer and the insured, puts an end to the contract,'' that is, so far as the insurer and the insured are concerned, but what about a third person for whose benefit the contract by its express terms was made, and who is not only not a party to the agreement of abandonment and rescission, but who has no knowledge of it?

The case of *Equitable Life Assur. Soc., etc.* v. *Stough* (1910), 45 Ind. App. 411, 89 N. E. 612, is cited by appellant as being directly in point. In that case there was never a complete delivery and acceptance of the policy. Moreover we think it is clearly distinguishable from the case at bar, in this: the complaint therein alleges that at the time of the death of Stough the policy was in the possession of the decedent and that the defendant about that time, without the knowledge or consent of the decedent, unlawfully and wrongfully took the policy from his possession and deprived him of the use thereof. The court said thereon: ''There is no evidence in support of these allegations.'' The facts as asserted in the opinion are that at the time the policy was handed to the insured (Stough) he gave the agent of the company his note for $25.00, due in sixty days, as and for a part of the premium on said policy, and before the

expiration of the sixty days Stough surrendered the policy to the agent and the agent surrendered to Stough the note with the memorandum thereon: "This note was given for life insurance which was returned, N. T. O.   Therefore the note was returned."   "N. T. O." meaning not taken out, the title to the Stough policy never passed.

Appellant also insists that the case of *Eagle* v. *New York Life Ins. Co.* (1911), 48 Ind. App. 284, 91 N. E. 814, is here controlling and that it sustains the Stough case.   The Eagle case turned on the right of the insured, as against the interests of the beneficiary, to make a loan on the policy, the terms of which policy required the insurer to make said loan to the insured on his demand and expressly authorized the insured to change the beneficiary *at any time*. In that case the court used this language: "Because of the last named provision the beneficiary did not have a vested right in the policy," citing *Equitable Life Assur. Soc., etc.* v. *Stough, supra.*   But it must be noted that the court says, when referring to what was conferred on the beneficiary by the policy, that "the policy conferred certain rights upon appellant as beneficiary, but she takes only the rights thus conferred upon her, subject to the limitations and provisions in the policy contained."   So it seems that the policy did confer on the beneficiary some thing of some kind; but the learned jurist, in writing the opinion of the court, quotes the following from the case of *Union Central Life Ins. Co.* v. *Woods* (1894), 11 Ind. App. 335, 339, 37 N. E. 180, 39 N. E. 205: "We think it otherwise, however, when the policy expressly provides for a restriction or limitation of the wife's interest, or makes it depend upon a future contingency, such as an arrangement for a loan of money from the company to the husband and a repayment of the same out of the proceeds of the policy, when due.   Whatever may be considered the true consideration underlying the insurance, the wife cannot be said to possess a greater interest in the policy than is given her by the terms thereof.   When

she acquires the *title* to the same, upon execution and delivery, she takes such *title* burdened with all its conditions and limitations. She can receive no more insurance, in other words, than the insured has contracted for in her behalf. If the insured has, therefore stipulated for a loan to himself, to be paid out of the insurance money when it becomes due, by an acceptance of the policy she assents to the deduction of such loan from such proceeds, and she cannot afterwards be heard to deny the company's right to make such deduction.'' It seems to us that the case of *Eagle* v. *New York Life Ins. Co., supra,* decides that the beneficiary acquires title to the policy upon its execution, delivery and acceptance, and takes that title burdened with all its conditions and limitations. We hold that the case of *Eagle* v. *New York Life Ins. Co., supra,* is not controlling in the case at bar and that it is not authority for holding that in such contract as the one here under consideration, the beneficiary does not have any interest or right in or to the policy.

The case of *Hopkins* v. *Northwestern Life Assur. Co.* (1900), 99 Fed. 199, 40 C. C. A. 1, would seem by a casual reading to determine that a beneficiary in a policy of insurance, which permits a change of beneficiary, has no vested interest in the policy, but upon a careful consideration of the opinion it will be noted that the court therein uses the words *"vested interest"*, not by themselves but coupled with the word *"permanent"*: ''Where the policy contains the stipulation recited, there can be no such *permanent* or vested interest as is claimed by the plaintiff * * * makes impossible the existence of such *permanent* or vested interest in such beneficiary.'' (Italics ours.) Thus it seems that the words permanent and vested are used in the same sense and as having the same meaning. And in that case there was no attempted cancellation of the contract by the insured but a surrender of the policy to the former company and the issuance in lieu thereof of a contract of the new company. In each contract the wife

was the beneficiary and the power to change the beneficiary was in each reserved by the insured. There was a continuation of the contract, not an act destroying the policy and cutting it off. This case is not controlling.

In most of the jurisdictions of this country, except 5. Wisconsin, the authorities seem to be uniform that in an ordinary life insurance policy, made payable to a beneficiary and which does not authorize a change of beneficiary, the named beneficiary has an absolute, vested *interest* in the policy from the date of its issuance, delivery and acceptance. *Kline* v. *National Benefit Assn., supra; Damron* v. *Penn Mut. Life Ins. Co.* (1885), 99 Ind. 478; *Wilburn* v. *Wilburn* (1882), 83 Ind. 55; *Masons', etc., Ins. Assn.* v. *Brockman* (1898), 20 Ind. App. 206, 214, 50 N. E. 493; *Franklin Life Ins. Co.* v. *Galligan* (1903), 71 Ark. 295, 73 S. W. 102, 100 Am. St. 73; *Lanier* v. *Eastern Life Ins. Co.* (1906), 142 N. C. 14, 54 S. E. 786; *Preston* v. *Connecticut Mut. Life Ins. Co.* (1902), 95 Md. 101, 51 Atl. 838; *Lockwood* v. *Michigan Mut. Life Ins. Co.* (1896), 108 Mich. 334, 66 N. W. 229. And where a policy or contract of 6. life insurance contains the right of the insured to change the beneficiary, such right must be exercised specifically in the manner provided in such policy or contract. *Farra* v. *Braman* (1909), 171 Ind. 529, 542, 86 N. E. 843; *Mason* v. *Mason* (1903), 160 Ind. 191, 196, 65 N. E. 585; *Holland* v. *Taylor* (1887), 111 Ind. 121, 12 N. E. 116; *Smith* v. *National Ben. Soc.* (1890), 123 N. Y. 85, 25 N. E. 197, 9 L. R. A. 616; *Arnold* v. *Empire, etc., Life Ins. Co.* (1907), 3 Ga. App. 685, 60 S. E. 470; 2 May, Insurance 399E; Bliss, Life Insurance (2d ed.) §§318, 337.

While we understand that the appellant insists that 4. in such a policy or contract (where the insured has the right to change the beneficiary) the beneficiary does not have a vested or indefeasible interest, but that the interest of the beneficiary is conditional and subject to the exercise of such right by the insured, or is subservient to

the conditions and limitations reserved by the insured, we do not understand appellant as claiming or insisting that the beneficiary in such policy has absolutely no interest. It seems, as we view it, that in such a policy or contract the beneficiary has some interest and that the insured has reserved to himself a power with the right of exercise to the extent of defeating or cutting off the interest of the beneficiary by a strict compliance with the terms of such power as in the contract or policy written; that the interest therein taken and owned by the beneficiary upon the issuance, delivery and acceptance of the policy was a defeasible, vested interest.

In the case of *Farra* v. *Braman, supra,* on page 540, the court, in quoting from *Holland* v. *Taylor, supra,* referring to the relation of the beneficiary to the contract, said: " 'It would be saying too much to say that she had no right. * * * So long as the contract remained as executed, she had the right of a beneficiary, subject to be defeated by change of beneficiary by the insured. So long as the certificate remained as executed, the assured *had reserved to himself the power* to change the beneficiary, and that was the extent of his *right* in, or *power* over, the certificate, or the *amount agreed to be paid at his death.*' " (Italics ours.) Again on page 541, the same court, referring to the case of *Mason* v. *Mason, supra,* said: "There are cases * * * in which the principles of equity may be invoked to aid a defective *exercise of power* by the assured in making a change in the beneficiary." And again, in referring to the case then under consideration it was said: "In the case at bar there is no room for invoking the aid of equity, as there is no element of fraud therein, and there is no defective exercise by the assured of the *power or right* to change his original beneficiary." (Italics ours.) As to the beneficiary having an interest and that the right reserved by the insured to change the beneficiary is the right

to exercise a power, see, *Isgrigg* v. *Schooley* (1890), 125 Ind. 94, 25 N. E. 151.

In the case of *Holder* v. *Prudential Ins. Co.* (1907), 77 S. C. 299, 57 S. E. 853, the court held that the rights of the beneficiaries became vested as soon as the insured and the insurer entered into the contract, and although the policy reserved to the insured the right to change the beneficiary, the insured had no right to surrender the policy for the purposes of cancellation.

In the case of *Washington Life Ins. Co.* v. *Berwald* (1903), 97 Tex. 111, 116, 76 S..W. 442, 1 Ann. Cas. 682, the court uses this language. "The wife has an insurable interest in her husband's life, which she may insure, taking a policy payable to herself or to her children, therefore it cannot be said that the insurance procured by the husband for the wife is a mere gratuity; it is to protect an existing interest, as well as the performance of a duty to the wife. It is a contract about a matter of interest to the wife and she can pay the premiums herself in case her husband fails to do so. * * * If she has such an interest in the contract that she might protect it against the wishes of her husband and the insurance company by making payments according to the terms of the contract, she is not a stranger to it, and surely her interest is of a character that she cannot be deprived of it without her consent, except by her failure to see that the terms of the contract are complied with."

In the case of *Freund* v. *Freund* (1905), 218 Ill. 189, 201, 75 N. E. 925, 109 Am. St. 283, the supreme court of that state, citing *Thomas* v. *Thomas* (1892), 131 N. Y. 205, 30 N. E. 61, 27 Am. St. 582, and other New York cases, says that the right of the assured to change the beneficiary is a qualified right; that is, subject to the consent of the company and to the indorsement upon the policy by the company at its home office. The tendency of the decisions when carefully examined, is to sustain the rule that a

change of beneficiary cannot be accomplished except by compliance with the provisions in the contract for such change.

In the case of *Arnold* v. *Empire, etc., Life Ins. Co., supra,* it is said that the beneficiary of an insurance policy has a vested right in the contract of insurance which cannot be diminished or affected by subsequent agreements between the insurer and the insured which are not stipulated or provided for in the original contract. The vested right of the beneficiary is subject to be divested only in accordance with express provisions of the contract, permitting a change of beneficiary. After reviewing and citing a great number of authorities, the court concluded the question by asserting that "The true rule would seem to be that laid down by May on Insurance §399 O, that 'if there is express provision for change, * * * a new designation may be made in the mode prescribed, but courts lean to upholding a designation, if clear, though defective in form.' Those courts which hold that the interest of the beneficiary, during the life of the insured, is merely an expectancy, where the insured has the right to change the beneficiary, hold, nevertheless, that the change must be made in strict conformity with the provisions of the policy upon that subject in order to divest the interest of the beneficiary named therein. We have heretofore alluded to the fact that the policy in this case provided for a change of beneficiary, but that the right of the plaintiff in error was not divested by any attempt to comply with this condition of the contract. That the beneficiary of a contract of life-insurance has a vested right in the contract (though it may be divested by the selection under the special provision of the contract of a new beneficiary) admits of no question." See, also, *Smith* v. *Head* (1885), 75 Ga. 755, 757.

In *Townsend's Assignee* v. *Townsend* (1907), 127 Ky. 230, 105 S. W. 937, 16 L. R. A. (N. S.) 316, the court said, on page 238: "The only reservation to the insured was the

right to surrender the policy at the end of the first ten years, or at the end of any subsequent five years, and to receive in cash its then cash surrender value. And this right continued only for thirty days immediately following the 10 and 5 year terms mentioned. Unless, then, this right was exercised at the time, and in the manner expressed in the policy, the interest of the named beneficiaries continued unaffected by it. Their interest was vested, subject to be defeated only (1) if they died before the insured, or (2) if he, at the time and in the manner expressed in the policy, exercised his option to surrender it in exchange for its then cash surrender value. It was not within the power of the insured, or *within his* and *the insurer's power,* to alter the terms of the contract so as to affect the interests of the beneficiaries. The insured had not the right to assign the policy to another, for value or not, nor had he the right to pledge it as collateral to secure his own indebtedness.'' (Italics ours.)

The contract of insurance in this case was delivered and accepted on December 9, 1907, was in the possession of the appellee, the beneficiary, was not surrendered to the company. On November 30, 1908, the appellant paid to the insured $140.45 in consideration of the execution of a release. Appellee was not a party to such release and acquired no knowledge of it until December 8, 1908, when appellant returned the check of the agent of the insured and appellee and notified appellee that such contract had been cancelled and requested the surrender of the policy. It seems to us that the pertinent inquiry here is: Who had the title to the policy on November 30, 1908? Certainly some sort of a title thereto was in the appellee and whatever that title was, she could be divested of it only by a strict compliance with the conditions of the contract as therein provided, or by some act or proceeding to which appellee was a party so that she would be bound thereby.

From the foregoing we conclude that the attempt to cancel the policy and terminate the liability of the appellant

to his beneficiary was not in accord with the specific terms of the contract; that a change of beneficiary as provided therein contemplated the continuance of the contract, and did not contemplate the complete annulment and determination thereof; that the beneficiary upon the issuance, delivery and acceptance of the policy of insurance took such a defeasible vested interest therein as under this contract was not to be divested by the agreement between the insurer and the insured cancelling the policy; and that the trial court did not err, therefore, in sustaining demurrers to the first, third, fourth and sixth paragraphs of appellant's answer to appellee's complaint.

The judgment of the Marion Superior Court is therefore affirmed.

NOTE.—Reported in 101 N. E. 289. Reported and annotated in 45 L. R. A. (N. S.) 192. See, also, under (1) 25 Cyc. 922; (2, 3) 25 Cyc. 873; (4, 6) 25 Cyc. 893; (5) 25 Cyc. 889. As to the power of insured to destroy rights of beneficiary, see 49 L. R. A. 737. On the question of changing designation in benefit certificate otherwise than in the prescribed method, see 15 L. R. A. 350. Upon the applicability of incontestable clause to nonpayment of premiums, see 6 L. R. A. (N. S.) 1039. As to the vested interest of the beneficiary in an ordinary life insurance policy, see 1 Ann. Cas. 684; 11 Ann. Cas. 49; Ann. Cas. 1912 B 1144.

