JACOBS *v.* QUEEN INSURANCE CO.

1. INSURANCE—FRAUD—PARTNERSHIP—MEMBERS OF FIRM.

In writing a policy of fire insurance, the insurer has the right to know who compose a copartnership which claims to be the owner of the insured property. The utmost good faith is required of the insured in answering inquiries concerning the ownership of the goods. The moral hazard involved in the contract is one of the essential elements of the risk and under a policy stipulating that it should be void if the insured concealed or misrepresented any material fact or circumstance, such as the name of one of the copartners, the concealment of the name of one of the members of the firm amounted to fraud and avoided the policy.

2. SAME—PRINCIPAL AND AGENT—NOTICE.

One who has power to solicit insurance, receive applications, fix premiums and accept risks, issue, countersign and renew policies of insurance, is such a general agent that his knowledge of facts concerning the membership of an insured firm will be imputed to his employer or principal.

3. SAME—WAIVER OF DEFENSES—NOTICE.

From evidence which failed to establish the essential fact that defendant's local agents at the time of filing its plea

and notice had knowledge that plaintiff firm or copartnership had a member who was not named in the application for insurance, no waiver of the defense that plaintiffs misrepresented the facts concerning their members could be held established, as matter of law, although in the proofs of loss the name of a third partner was stated: the fact might have been consistent with a change of firm subsequent to the issuance of the insurance.

4. SAME—EVIDENCE—SIMILAR TRANSACTIONS—FRAUD.

It was competent on the trial to show that plaintiffs had made representations of a like nature relative to the membership of the firm to other persons about the same time that the policy was applied for, to show the intent and nature of such misrepresentations.

5. SAME—ESTOPPEL—KNOWLEDGE.

Knowledge of all the material circumstances is essential to waiver or estoppel arising from the attempt to advise the policy holder of defendant's reasons for refusing payment, or from the filing of a notice of the specific defenses in one action that later was discontinued by plaintiffs who thereupon instituted a second suit upon the policy.

6. SAME.

The disputed claim of defendant that false representations were made ought to have been submitted to the jury, together with special interrogatories upon the issues of notice and fraud, to wit: (1) whether defendant's agents knew that there was a third member of the firm; (2) whether any of the firm advised defendant of the true state of facts; and (3) who were declared by plaintiffs at the time of issuing the policy to be members of the copartnership.

Error to Wayne; Mandell, J.    Submitted October 15, 1914.    (Docket No. 28.)    Decided December 19, 1914.    Rehearing denied April 28, 1915.

Assumpsit by Charles L. Jacobs and another against the Queen Insurance Company of America on a policy of fire insurance.    Judgment for plaintiffs.    Defendant brings error.    Reversed.

183 Mich.—33.

*Stevenson, Carpenter, Butzel & Backus (J. W. Mooney, R. M. Edmonds,* and *Thomas G. Long,* of counsel), for appellant.

*Selling & Brand,* for appellees.

STONE, J.   This action is based upon a policy of fire insurance issued on December 3, 1910, by the defendant and appellant, to D. Littman & Co., assignors of the plaintiffs and appellees, covering an amount not exceeding $2,250 upon a stock of merchandise, and not exceeding $50 upon store furniture and fixtures, contained in a two-story frame building located in the village of Woodville, Sandusky county, Ohio, for the term of one year from the date of policy. The policy in suit was procured by D. Littman & Co., and issued to said firm in the State of Ohio, and was countersigned by the agents of defendant at Woodville, aforesaid, a village of about 1,000 population about 18 miles from Toledo. The insured at the time was a copartnership doing business in the State of Ohio, and the property at the time of the issuing and delivery of the policy, and at the time of the fire hereinafter referred to, was located in the State of Ohio. The insured partnership consisted of Harry Friedenberg, Ben Levine, a stepbrother, and David Littman, a brother-in-law. The policy in suit was one of six policies procured from different insurance companies through the same agency, at the same time, making a total of $12,000 on the stock and $200 on the furniture and fixtures; and, while written on December 3d, the policies were not delivered until December 10, 1910, and the fire occurred and the insured property was totally destroyed on December 15, 1910, at 1:40 o'clock a. m. The insured claimed to have carried a stock of upwards of $15,000 in value. They attempted to procure $14,000 of insurance upon the stock, but the agents of the insurance companies declined to write for more than $12,000 thereon. The policies

carried an 80 per cent. coinsurance and reduced rate average clause.

The partners Friedenberg and Levine had been engaged in business in Detroit. About 1907 Friedenberg engaged in an extract manufacturing business in Detroit, which he claims to have purchased from his cousin, Morris Harris, and which he ran for a few months when the same was burned. He collected the insurance on the stock and paid the amount to Harris on his indebtedness for purchase price. After the said fire, Friedenberg peddled pictures for some months, then bought a dry goods store on Dubois street, in Detroit, for which he paid, or agreed to pay $600 or $700. He ran this business for a few months, and then formed a partnership with Littman and moved to McDougall avenue. This business continued until the insured partnership was formed in the fall of 1910. Littman resided in Chicago, and continued to reside there. Immediately before Levine became a member of the insured firm he had been employed at the Globe Dry Goods Store in Hamtramck. There was a fire there in which the stock was damaged. He claims to have purchased this stock. Immediately after the insured partnership was formed Friedenberg went to Woodville, Ohio, to look up a location for business. He rented a store, executing a written lease. Neither the owner of the store nor the notary who took the acknowledgment of the lease was informed that his name was Friedenberg. He signed the lease in the name of Littman. At the time of such signing Friedenberg inquired of the owner of the store whether he could get insurance on the stock, and he was taken to the insurance agents, who later wrote the insurance. The insured firm took the Detroit stocks, the value of which is in dispute, to Woodville, and some new stock was added. The store was then opened for business about November 15, 1910. Upon inquiry by one of the insurance agents before the

issuance of the policies, as to who composed the firm of D. Littman & Co. there was evidence that Friedenberg expressly disclaimed having any interest in the firm himself, and Levine stated to the agent that Littman and Levine, those two, were all there were in the firm. Upon this subject the agent testified as follows:

"When the insurance was written, the one that came to see about the insurance disclaimed having any interest in the firm.

"*Q.* What is that?

"*A.* The one that came to see about the insurance in the first place, the morning that the insurance was written, I went to the store to get the name, and see how the firm wrote their name whether 'D'Littman,' or whether it was 'De Littman,' or whether the 'D' stood for the initial, and to make it plain I said—

"*Q.* Who did you speak to?

"*A.* Mr. Levine. I wanted to get the name to know how to write it up, and the one that came to see about the insurance first came, as Mr. Levine was busy at that time and I told him what I wanted, and he said, 'I have nothing to do with it; that other fellow does,' and so then I said, 'All right, you can tell him,' and I went down to the other store, and when I came back they were standing talking, and Mr. Levine said he didn't know what I wanted him to write that down for, and I said I did not understand how they wrote it, and I wanted it written down the way it was, whether it was 'D'Littman.' I asked him whether the 'D' stood for David Littman, and he lived in Chicago, and I said, 'Who is the company?' and he said he was.

"*Q.* How about the other gentleman, did he say he was a member of the firm?

"*A.* No, he did not say he was not a member, but he said that was all there was, those two all there was in the firm.

"*Q.* Did he say the other gentleman was not a member?

"*A.* He did not say he was not a member, but he said those two were all.

"*Q.* Which two?

"*A.* Littman and Levine."

Further evidence tended to show that, prior to the issuance of the policies, Ben Levine, in response to inquiry of C. C. Layman, one of the agents, as to the exact names of the members of D. Littman & Co., gave to such agent one or more slips of paper in the handwriting of Ben Levine, one containing the name of "D. Littman" only, and the other "D. Littman & Co.," and immediately underneath the name of "B. Levine." Further, there was testimony that, on November 7, 1910, Ben Levine, on behalf of the copartnership of D. Littman & Co., made, signed, and rendered a financial statement to R. H. Lane & Co., of Toledo, Ohio, which contained the following statement:

"Firm of D. Littman & Co. is composed of the following persons: D. Littman, B. Levine."

And on the same date, B. Levine, on behalf of D. Littman & Co., made, signed, and rendered a financial statement to the firm of Baumgartner & Co., of Toledo, Ohio, in which again the names of the members of the firm of D. Littman & Co. were given as D. Littman and B. Levine. On the same date, in response to the inquiry of A. A. Hall, credit man for Baumgartner & Co., of Toledo, as to who composed the firm of D. Littman & Co., Ben Levine replied, orally, that the firm of D. Littman & Co. was composed of D. Littman and B. Levine. Much of this testimony was denied by the assured. On December 19, 1910, the policy in suit, and two others, were assigned by D. Littman & Co. to the plaintiffs, for the purpose of securing a pre-existing indebtedness of $526, due the plaintiffs from the assured, and to pay some other debts of D. Littman & Co., which were to be paid by the plaintiffs from the proceeds of said policies, the balance, if any, to be returned to D. Littman & Co. On January 14, 1911, original proofs of loss were made by the insured. Attached to the plea

of the general issue, defendant gave notice, among other things, that said policy of insurance contained the following provisions:

"This entire policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance, or the subject thereof; or if the interest of the insured in the property be not truly stated herein; or in case of any fraud or false swearing by the insured touching any matter relating to this insurance or the subject thereof, whether before or after a loss."

We copy further from the notice the following:

"That prior to the issuance of said policy of insurance, and with the purpose and intent of inducing the defendant to issue said policy of insurance, one Ben Levine falsely and fraudulently stated and represented to the agent of this defendant that the said D. Littman & Co. was a copartnership, and was composed of one D. Littman and said Ben Levine, and no others; whereas, in truth and fact, as said Ben Levine well knew when he made said false and fraudulent statement, said copartnership was not composed of said D. Littman and said Ben Levine and no others; but, on the contrary, said copartnership was composed of said D. Littman, said Ben Levine and one H. Friedenberg; that said false and fraudulent statement was made by said Ben Levine with the purpose and intent of thereby defrauding this defendant; that this defendant relied on said false and fraudulent representation, and in reliance thereon issued said policy of insurance; that but for said false and fraudulent representation and its reliance thereon, it would not have issued said policy of insurance."

The trial court refused to submit to the jury the question raised by the evidence under the foregoing paragraph of the notice, as to whether false representations were made to the agent of this defendant company for the purpose of inducing this defendant to issue the policy in suit, but directed the jury to return a verdict for the plaintiffs, leaving to the jury only the question of damages. The trial court also

refused to submit to the jury the following special questions requested by the defendant:

(1) Did the agents of the defendant insurance company know when the policy sued upon was issued that H. Friedenberg was a member of the firm of D. Littman & Co.?

(2) Did any member of the firm of D. Littman & Co. inform the agent of the defendant insurance company, before the policy sued upon was issued, that H. Friedenberg was one of the partners in that firm?

(3) Was it represented by any member of the firm of D. Littman & Co. to the agent of the defendant insurance company, at the time the policy sued upon was applied for, that the firm consisted of D. Littman and Ben Levine only?

The trial resulted in a verdict and judgment for the plaintiffs in the sum of $2,300 damages, and costs. There was a motion for a new trial upon the grounds of newly discovered evidence that the insured did not have the amount of goods or property which they represented they had, that the insured swore falsely in the proofs of loss as to the value of the goods destroyed, and as to the origin of the fire, and that Harry Friedenberg, one of the members of the insured firm, had admitted, both orally and in writing, that he wilfully set the fire which caused the loss in question.

The case is here upon writ of error, and by the assignments of error it is the contention of appellant, among other things, that the court erred in directing the jury to return a verdict for the plaintiffs, in denying the motion for a new trial made upon the ground of newly discovered evidence, in refusing to submit to the jury the question of false representations and concealment as to Friedenberg's membership in the insured firm, and in refusing to submit to the jury the special questions above set forth.

Other questions were raised, both in the pleadings and the evidence, which we do not deem it necessary to specially allude to, which were presented by a mo-

tion for a directed verdict for the defendant made at the conclusion of the proofs. We are not prepared to say that, upon those questions, the court should have directed a verdict in favor of the defendant, and no error is assigned upon the refusal of the court to submit them to the jury.

It is the claim of the appellant that the contract of insurance is one requiring the utmost good faith, inasmuch as knowledge of the facts of ownership and value of the property is knowledge possessed exclusively by the insured, and the insurer must, of necessity, rely upon the truth of the representations made by the insured upon these matters. Therefore it is fundamental that the making of a material false representation by the insured for the purpose of inducing the issuance of the policy renders the policy void, and constitutes a complete bar to any recovery thereon.

It is further claimed that it is important to note the fact that Friedenberg was the only member of the firm who was known to have had previous connection with a fire loss, to wit, in the extract factory.

It is also urged that a representation as to the members who composed an insured copartnership owning the property is a representation of a material fact, and the following cases are cited: *Abbott* v. *Insurance Co.*, 85 Mass. (3 Allen) 213; *Pelican Ins. Co.* v. *Smith*, 92 Ala. 428 (9 South. 327), affirmed in 107 Ala. 313 (18 South. 105).

In the last-cited case the court said:

"An insurance company has the right to know the real owner of the property insured and the extent of his insurable interest, and a contract of insurance is one in which the utmost good faith is required of the insured. A representation has been defined to be a statement incidental to the contract relative to some fact having reference thereto, and upon the faith of which the contract is entered into. 4 Wait, Act. & Def., page 39; May on Ins., § 181."

"Where the policy, by express stipulation, requires a full statement as to the ownership of the property, it becomes material, and one who accepts such a policy, issued upon such statements, becomes bound thereby. *Brown* v. *Insurance Co.*, 86 Ala. 189 (5 South. 500); *Western Assurance Co.* v. *Stoddard*, 88 Ala. 606 (7 South. 379)."

See, also, *Capital City Ins. Co.* v. *Autrey*, 105 Ala. 269 (17 South. 326, 53 Am. Rep. 121).

We have no doubt that the insurer has the right to know who composes the partnership owning the property which is to be insured. The moral hazard involved in the contract is one of the essential elements of the risk, and the materiality to the insurer of the personnel of the insured copartnership, especially when inquiry is made with reference to such membership, becomes apparent. A leading case upon this subject is *Graham* v. *Insurance Co.*, 87 N. Y. 69 (41 Am. Rep. 349). We quote from the syllabus of that case:

"Where a policy of fire insurance contained a clause declaring it to be void, 'in case of any misrepresentation whatever, either in the written application or otherwise,' a misrepresentation will avoid the policy, and this, without regard to the question as to its materiality to the risk."

Defendant in that case issued to the plaintiff two policies of insurance. At the time of the application for the first policy, plaintiff's agent, who made the application, stated in answer to an inquiry as to ownership that "Mrs. Catherine E. Jack, widow of Capt. Jack," was the owner, and was going to keep a first-class hotel on the premises, and the policy was made out insuring Catherine E. Jack, loss, if any, payable to plaintiff. as mortgagee. When application was made for the second policy, the agent stated there was a mistake in giving the name, that it should be Margaret instead of Catherine in the first policy,

which was altered accordingly, but he repeated the statement that the owner was the widow of Capt. Jack. The title to the property was in Margaret E. Jack, an infant three years of age, who had no general guardian. The policies contained the condition above stated. Held, that the misrepresentation was material, and that it was not error for the court to refuse to submit that question to the jury. In its opinion the court said:

"Even if it be assumed that the materiality of the misrepresentation actually made is important, we think it is sufficiently established that the statement made as to the ownership of the property was material, and that the representation, if untrue, was such a violation of the terms of the policy as rendered it void. A distinct inquiry was made at the time as to the ownership of the property, of the plaintiff's agent, and a direct and positive answer given. * * * The representations were also believed by the defendant's agent, and upon the faith of them the policies were issued. The inquiry made evinces that it was material, and it is evident that it was important to the underwriter to know the person who owned the property, and who was to keep the hotel and conduct the business; whether it was one well known or otherwise—an adult who would be likely to exercise proper care over the same, or an infant who would be unable to do so, and who, as the evidence shows in this case, had no general guardian to protect her rights. The insurer has a right to know to what extent the insured has the ability to protect, or an interest in protecting, against the perils insured against. *Savage* v. *Insurance Co.*, 52 N. Y. 502, 504 [11 Am. Rep. 741]. And in a case like this, when a specific inquiry is made, the question of the materiality of the statement in respect to the risk is settled by the parties as a matter of contract. A broad distinction exists whether the statement is made in answer to inquiries or otherwise. In the one case the answers are made material by the act of the assured, whether they are in fact or not; while in the other case, even though the statements are made a part of the policy, they are not efficacious as warranties, although material in fact.

(Wood on Fire Ins. 422, § 214.)   This is especially the case when the inquiry calls upon the party to communicate the nature of his interest in the property, and he is bound to answer accurately and at his peril" (citing cases).

Many more cases might be cited to the same effect. 19 Cyc. p. 679:·

"The insured may, by failing to disclose facts material to the risk to be assumed under the policy, and which he has reason to believe are not within the knowledge of the company, be guilty of such fraud as to defeat the contract."

If the insured undertakes to state fully all of the circumstances which affect the risk, he is bound to tell the whole truth, and concealment will render the policy void.   19 Cyc. p. 681, and cases cited.

The contract of fire insurance is in its nature personal, being presumed to rest to some extent on the trust and confidence of the insurer in the insured that the property will not be destroyed by the insured for the purpose of realizing on the contract.   Hence the importance of answering truthfully all questions relating to ownership.

Counsel for plaintiffs and appellees, not specially controverting the position that such claimed representations and concealments would be material, say:

"Assuming, which is contrary to the fact, that the Laymans [insurer's agents] did not know that Friedenberg was a member of the firm, and that fact was concealed from them, there is absolutely nothing in the record to justify even a suspicion that the policy would not have been issued had Mr. Friedenberg's name been mentioned.   However, a complete answer to all of counsel's argument is that if there had been any misrepresentations which would have justified the voiding of the policy, the insurance company was bound to notify the insured and Jacobs & Friedman immediately upon the discovery of this alleged false representation that they considered the policy void. The defendant had no right to put the insured and

their assignees to the enormous expense to which they were put prior to the filing of the plea in this case, and which for the first time pleaded this alleged defense. The proofs of loss filed January 15, 1911, with each of the companies distinctly stated that the firm of D. Littman & Co. consisted of David Littman, Ben Levine and Harry Friedenberg. The connection of Mr. Friedenberg with D. Littman & Co. was known to the insurance companies the moment they received these proofs of loss. At that time their agents, Mr. and Mrs. Layman, knew whether or not there had been any false representations made to them before the policies were issued. * * * When the first suit was brought, although the defendant put in a large number of defenses, it made no claim that the policy had been obtained by misrepresentation or fraud. It was not until more than a year after the fire had occurred, and after the insured and Jacobs & Friedman had been put to an enormous expense in the way of traveling back and forth from Chicago and Detroit to Woodville, employing attorneys, and the expense of two suits on each policy, that the defendant made this defense, and did not even tender back the premiums. *New York Life Ins. Co.* v. *Baker,* 83 Fed. 647, 27 C. C. A. 658. It is an elementary proposition that, where an insurance company, with full knowledge of the facts afterwards relied upon in support of its claim that a policy was void *ab initio,* bases its refusal to pay the loss upon other grounds accruing subsequent to the fire, after which the insured is subjected to loss of time in trying to adjust the loss and incurs the expense of bringing suit for its recovery, the company is estopped from asserting such claim of forfeiture as a defense in said suit" (citing *Marthinson* v. *Insurance Co.,* 64 Mich. 372 (31 N. W. 291), and many other cases).

It should be here stated that suit had first been begun upon this policy on June 27, 1911, and the plea and notice thereunder, in that suit, did not raise the question of false representation and concealment which we have above set forth, but notice was given of certain other alleged defenses. That suit was discontinued December 9, 1911, and this one begun De-

cember 13, 1911. We think a number of answers may be given to the objection urged by appellees as to the availability of the defense we are here considering.

It is undoubtedly true that the general local agent —that is, one who has power to solicit insurance, to receive applications, to fix premiums, to accept risks, and to issue, countersign, and renew policies in a particular locality—is such an agent that his knowledge will be imputed to the insurer. The record in this case is not very clear as to the extent of the power of the agents of the companies at Woodville. It does appear, as above noted, that while the policies were dated on the 3d day of December, they were not delivered until the 10th day of December, and that in the meantime reports had been made to the several companies. There is no evidence that the agents reported, or were required to report, to the companies the individual names of the insured partnership. While the proofs of loss did show that the firm, at that time, was composed of David Littman, Ben Levine, and Harry Friedenberg, it did not necessarily follow that Friedenberg was a member of the firm at the time the policy in question was issued. He might have been introduced into the firm at a later date for aught that appears in this record. There is no evidence that either the defendant, or its agents, at the time of entering the plea in the first suit, had full knowledge of the facts of which notice is given in the instant case, and we do not think that this can be presumed. There is nothing to show that either the defendant, or its agents, had any knowledge, at the time the first plea was interposed, as to the similar representations which it is claimed were made to the merchants in the city of Toledo. As showing the *quo animo* and nature of the representations made to the agent, it was competent to show other similar representations made at or about the same time to other persons. *Beebe* v. *Knapp*, 28 Mich. 53.

The language of Chief Justice CAMPBELL in *Security Ins. Co.* v. *Fay,* 22 Mich. 467-473 (7 Am. Rep. 670), is pertinent here:

"The waiver that is spoken of in these cases is another term for an estoppel. It can never arise by implication alone, except from some conduct which induces action in reliance upon it, to an extent that renders it a fraud to recede from what the party has been induced to expect."

We think the rule is well stated in *Smith* v. *Insurance Co.,* 107 Mich. 270 (65 N. W. 236, 30 L. R. A. 368), where this court held that where an insurance company, *with knowledge of all the circumstances attending a loss,* undertakes to notify the insured of its specific reasons for denying the liability, it cannot, when sued upon the policy, set up any additional grounds for defense.

In the light of this record, we cannot say that the defendant is estopped from interposing the defense claimed in the instant case. There being a sharp conflict in the evidence as to whether the representations were made and the concealment practiced, as claimed by the defendant in its notice and evidence, we think it was the clear duty of the trial court to submit that question to the jury, together with the special interrogatories above set forth, and that it was prejudicial error to refuse so to do. Clearly, as to whether these representations were made or not was one of fact. The effect of the representations may have been a question of law. Upon that subject there is a diversity of opinion; some respectable courts holding that even the question of the materiality of the representations is one of fact to be submitted to the jury. There is authority to the effect that whether a material fact was intentionally or fraudulently concealed is a question for the jury. *Johnson* v. *Insurance Co.,* 93 Wis. 223 (67 N. W. 416).

It is very clear that the question whether the rep-

resentations were made or not is one of fact. This view of the case renders it unnecessary for us to pass upon the question of the refusal of the court to grant a new trial upon the grounds stated in the motion therefor. As a new trial must be had, the questions involved in that motion may never arise, and it is unnecessary for us to discuss them.

For the error pointed out, the judgment of the court below is reversed, and a new trial granted.

McALVAY, C. J., and BROOKE, OSTRANDER, MOORE, and STEERE, JJ., concurred. BIRD and KUHN, JJ., concurred in the result.