LEACH v. COMMERCIAL CASUALTY INSURANCE CO.

1. INSURANCE—PRINCIPAL AND AGENT—NOTICE TO AGENT ESTOPS PRINCIPAL.
   If the agent of an insurance company returned a policy to the insured without change after it had been sent to him for correction of misstatements therein, the insurer would be estopped from denying liability because of said misstatements.

2. APPEAL AND ERROR—FINDINGS OF TRIAL JUDGE MUST BE ACCEPTED BY SUPREME COURT IN ABSENCE OF BILL OF EXCEPTIONS.
   In the absence of a bill of exceptions, the facts found by the trial judge must be accepted by the Supreme Court as the facts in the case, and all of them.

3. INSURANCE—BROKERS NOT AGENTS—NOTICE—ESTOPPEL.
   Knowledge by insurance brokers, who were in no wise agents of the insurer, of misstatements in a policy which they had procured through insurer's agent, was not such notice to the insurer as would estop it from denying liabil-

¹Insurance, 32 C. J. § 615; ²Appeal and Error, 4 C. J. § 1789; ³Insurance, 32 C. J. § 147.

ity because thereof, in the absence of any applicable statute making brokers agents of the insurer.

4. SAME—BURGLARY INSURANCE—EFFECT OF MISREPRESENTATIONS—WHEN MATERIAL.

Where representations in the application for a burglary insurance policy are made material in the contract by the insurer, the court may not find that the representation that the applicant had previously sustained only one loss by burglary, whereas in fact he had sustained three such losses, was not a material misrepresentation.

SHARPE, C. J., and BIRD and MCDONALD, JJ., dissenting.

Error to Wayne; Dingeman (Harry J.), J.   Submitted January 12, 1927.   (Docket No. 78.)   Decided June 6, 1927.   Rehearing denied July 29, 1927.

Assumpsit by Morris Leach against the Commercial Casualty Insurance Company on a policy of burglary insurance.   Judgment for plaintiff.   Defendant brings error.   Reversed.

*Stevens T. Mason* and *Mason, Alexander, Ruttle, Cox & McCaslin,* for appellant.

*Henry P. Seaborg,* for appellee.

BIRD, J. (*dissenting*).   Plaintiff secured a policy of burglary insurance from defendant in November, 1921, in the amount of $1,000 and paid therefor a premium of $32.50.   Subsequently, in October, 1922, he suffered a loss of $822 by burglary.   In due time he presented the defendant with proofs of loss, but it denied liability on the ground that plaintiff made certain representations of warranties which were untrue.   The case was heard by the trial court without the aid of a jury.   After it was submitted the court made the following finding of facts and the law:

"1. Morris Leach, the plaintiff in this case, had a

---

*Burglary and Theft Insurance, 9 C. J. § 8 (Anno); Insurance, 32 C. J. § 514.

policy with the Commercial Casualty Insurance Company, the defendant in this case, indemnifying him for all loss by burglary, theft or larceny of any of the property from within the house, dwelling or apartment, or rooms occupied by him. The policy covered in the amount of $700 on jewelry, precious stones, watches, articles of gold, platinum and sterling silver, furs and articles made entirely or principally of fur, and for $300 on money, securities, not exceeding $50, and on wearing apparel, laces, rugs, tapestries, pictures, paintings, plated ware and all other household goods and personal property common in residences generally.

"I find that the policy contained the following:

" 'This Agreement is subject to the following conditions.'

"Then follows a list of conditions, the last two of which are as follows:

" 'No provisions or conditions of this policy shall be waived or altered except by indorsement attached thereto, signed by the president, a vice-president, secretary or assistant secretary of the company, nor shall notice to any agent, nor shall knowledge possessed by any agent or by any other person, be held to effect a waiver or change in any part of this policy.

" 'The statements in items numbered 1 to 15 inclusive, in the schedule hereinafter contained are declared by the assured to be true. This policy is issued in consideration of such statements and the payment of the premium in the schedule expressed.'

"Immediately following these two provisions is a schedule containing fifteen items. Item No. 13 is as follows:

" 'The assured has not sustained any loss or damage, nor received indemnity for any loss or damage by burglary, theft or robbery within the last five years, except as herein stated.'

"Then follows a line on which is written the following:

" 'Loss in Fidelity & Casualty Company about six months ago.'

"2. I find that Morris Leach reported that he had sustained loss on October 15, 1922, which was during the term of the policy, and that goods had been stolen

from him while Mr. Leach and his family were asleep in his house, and that he lost jewelry, silverware and furs amounting to $766, and wearing apparel and cash amounting to $56.    I further find that on December 5, 1922, plaintiff filed with defendant proofs of loss as required by the terms of the policy.

"3. I further find that the insurance company denied liability on the ground that the statement as to previous losses were not true.

"4. I find that on April 24, 1919, the plaintiff had a loss by burglary, theft or larceny, in which entrance was presumed to have been made through windows, and that he collected $385 from the Travelers Indemnity Company.    I find that on September 18, 1920, the plaintiff sustained a loss by theft, and that he collected something over $1,000 from the Maryland Motor Car Insurance Company.    I find that on August 14, 1921, the plaintiff sustained a loss by burglary for which he started suit against the Fidelity & Casualty Company, claiming something like $2,800, but that he has not yet collected in that suit.    I find that on November 15, 1921, the plaintiff suffered a loss by burglary, the burglars presumably having entered through the kitchen window, and that he received indemnity from the Fidelity & Casualty Company in the sum of $40.    I find that in all of his losses including the loss upon which this suit is brought the burglars were supposed to have entered through windows, with the exception of the Maryland Motor Car Insurance Company loss which was the theft of an automobile.

"5. I find that the plaintiff secured his policy from the Greenberg Insurance Agency, and that this agency was licensed to act as agent for a great many different insurance companies, but that the Greenberg agency had never been authorized by license, or any other written authority to act as agent for the defendant insurance company.    I find that the Greenberg Insurance Agency procured this policy from the H. H. Neale Company by calling up over the telephone and requesting the policy written as indicated.    I find that the Greenberg Insurance Agency did not know in what company the policy would be written by the H. H. Neale Company until the policy was delivered.    I find that the plaintiff did not designate any particular in-

surance company when he ordered the policy from the Greenberg Insurance Agency, but that he left that entirely with the Greenberg Insurance Agency. I find that the Greenberg Insurance Agency did not designate any particular insurance company when they ordered this policy from the H. H. Neale Company, but left the selection of the company entirely with the H. H. Neale Company.

"6. I find that the policy was delivered to the assured and that he discovered that no mention was made of any previous losses. That he returned the policy to Mr. Greenberg and called his attention to that fact. That the policy was later again delivered to the plaintiff, with the statement that it was now all right. That plaintiff did not read it, and kept it in his possession up until the time this suit was brought.

### "Findings of Law.

"1. A representation has been defined to be a statement incidental to the contract relative to some fact having reference thereto, and upon the faith of which the contract is entered into. *Jacobs* v. *Insurance Co.,* 183 Mich. 520.

"A misrepresentation in insurance is a false representation of a material fact by one of the parties to the other, tending directly to induce the other to enter into the contract, or to do so on less favorable terms to himself, when otherwise he might not enter into the contract at all, or he might demand terms more favorable. 32 C. J. pp. 1273, 1280, 1288.

"A warranty in the law of insurance consists of a statement by insured upon the literal terms of which the validity of the contract depends. 32 C. J. *supra.*

"2. The contract of insurance was prepared by the defendant company and must be construed against it on any doubtful point.

"3. Construing the statement relative to previous losses as a warranty would work a forfeiture of plaintiff's rights, which is not favored in the law.

"4. There is no express stipulation making the representations as to previous losses warranties. No words of warranty are used. There was no written application for the insurance in question. There was no specific inquiry made by the insurer. There was no provision in the policy that the falsity of the repre-

sentations would avoid the policy.   Therefore, under such circumstances the courts very properly incline to treat them as representations merely and therefore of no consequence unless shown to be material. · *American Ins. Co.* v. *Gilbert*, 27 Mich. 429; *Continental Ins. Co.* v. *Horton*, 28 Mich. 177; *Business Men's Assurance Co.* v. *Marriner*, 223 Mich. 1.

"5. Whether the representation made by plaintiff as to previous losses was material does not appear and the burden of proof is upon the defendant.   This court cannot say as a matter of law that the fact that there were previous losses was material to the risk. One previous loss, of which defendant had 'knowledge, was evidently not regarded as sufficient reason for declining to make the contract.   Having regarded one previous loss as immaterial, this court cannot say, as a matter of law, that four previous losses would have been regarded as material.   Whether the previous losses are material depends upon other considerations as well as the number of such losses.

"6. It is my conclusion, therefore, that plaintiff is entitled to a judgment in the sum of $745.50, being the amount of his loss covered by the policy, with interest at 5 per cent."

There is no bill of exceptions returned to this court, and defendant has filed no exceptions to the court's finding of fact.   It appears from the finding of facts that when the policy was delivered to plaintiff he noticed the representation that only one loss had been sustained and indemnity received an account of burglary, etc., within five years.   He took the policy back to the Greenberg agency and called its attention to that representation and informed it that it was not correct, and disclosed his previous losses.   The Greenberg agency took the policy, kept it for a time, and returned it with the advice that it was all right now. There being no bill of exceptions we are not informed what the Greenberg agency did with the policy.   If the policy with its defect was brought to the attention of the agent who issued it, and the agent consented that it might stand as it was, it should now be es-

topped from making that defense, because it had knowledge of the true facts before it reissued it. *Simpson* v. *Insurance Co.,* 184 Mich. 547; *Marx* v. *Insurance Co.,* 192 Mich. 497; *Blake* v. *Insurance Co.,* 194 Mich. 589; *Gordon* v. *Insurance Co.,* 197 Mich. 226 (L. R. A. 1918E, 402).

The trial court, however, was of the opinion that whether plaintiff's representations as to previous losses was material depended on proof. The company having regarded one loss as immaterial, the trial court could not say, as a matter of law, that three previous losses were material without some proof. None having been offered to that effect, the trial court was unable to find that the statements were material, and, therefore, warranties. If the statements were not material to the risk they were representations, and as the representations were accompanied by no fraud there would seem to be no reason why the conclusion of the trial court should not be sustained. See *Lieberman* v. *Casualty Co.* (Mo. App.), 244 S. W. 102.

The judgment should be affirmed.

SHARPE, C. J., and MCDONALD, J., concurred with BIRD, J.

FELLOWS, J.     There can be no question but that my Brother BIRD has correctly stated the law when he says:

"If the policy with its defect was brought to the attention of the agent who issued it, and the agent consented that it might stand as it was, it should now be estopped from making that defense, because it had knowledge of the true facts before it reissued it."

If the Greenberg agency had been the agent of defendant and authorized to issue its policies, knowledge communicated to such agency by the insured would be knowledge of defendant so far as the particular questions here involved are concerned. But we have

no bill of exceptions before us, and the facts found must be accepted as the facts in the case, and all of them.   There is in such findings an express finding that the Greenberg agency was not the authorized agent of defendant.   It did not issue this policy, nor is there any finding that the Neale agency had authority to issue policies.   It is also found that the Greenberg agency acquired knowledge of the numerous other burglaries plaintiff had had when he returned the policy for correction, but there is no finding that the Neale agency had any such knowledge or that defendant had such knowledge.   In this transaction the Greenberg agency was acting as a broker.   For some reason, not disclosed by this record, it did not desire to place the risk in any of the companies it represented, and by telephone it requested the Neale agency to place it in some of its companies.   In *Bonewell* v. *Insurance Co.*, 167 Mich. 274 (Ann. Cas. 1913A, 847), it was said by Mr. Justice BROOKE, speaking for the court:

"But in no event could the defendant company in the case at bar be bound by the knowledge of the facts possessed by Wrock & Watson, because, at the time the plaintiff communicated the information to them, they were acting as insurance brokers, and not as agents for defendant."

One of the cases there cited by this court (*Freedman* v. *Insurance Co.*, 182 Pa. 64 [37 Atl. 909]) is on all fours with the case at bar.   In that case it was claimed that one Sturdevant had knowledge of facts which, if he was agent of the defendant, bound it. Like the Greenberg agency here, he did not desire to place the risk in any of the companies he represented but placed it with the agent of defendant.   It was said by the court:

"His own testimony which is uncontradicted on this point, shows that Sturdevant was an insurance broker,

239—Mich.—2.

having no special relation to the defendant company but occasionally taking out policies in it, through its regular agent, for his customers when he could not or did not wish to place their risks in the other companies which he personally represented. He was not at the time he procured this insurance and had never been, an agent for the defendant, nor was he acting on this occasion in behalf or at the suggestion of the regular agent, Darte. On the contrary, in soliciting this insurance he was pursuing his own business as a broker and, as he says, using his own judgment where to place the insurance his customers authorized him to procure for them."

And it was held that Sturdevant was not the agent of the defendant on the authority of *Pottsville Mut. Fire Ins. Co.* v. *Improvement Co.*, 100 Pa. 137.

Plaintiff's counsel relies on *Pollock* v. *Insurance Co.*, 127 Mich. 460. That case, however, was based on a statutory provision (2 Comp. Laws 1897, § 7246) applicable to fire and marine insurance, which reads:

"The term agent or agents, used in this section, shall include any acknowledged agent, surveyor, broker, or any other person or persons who shall in any manner aid in transacting the insurance business of any insurance company not incorporated by the laws of this State."

This provision, it will be noted, included brokers, and a somewhat similar provision was made applicable to life insurance by Act No. 256, Pub. Acts 1917, pt. 3, chap. 2, § 28 (Comp. Laws Supp. 1922, § 9100 [172]). But our attention has not been called to any such provision applicable to casualty insurance nor have we found one.

The trial judge was of the opinion that inasmuch as one burglary had been overlooked, the company would undoubtedly have overlooked several others, and that, therefore, the representations were not material. But by the findings of fact it appears that the company had made such statements material in its contract.

This it had a right to do.    In *Bonewell* v. *Insurance Co.*, 160 Mich. 137, Chief Justice MONTGOMERY, speaking for the court, said:

"These questions may or may not be of importance to insurance companies.    They certainly have the right to make them material.    In all lines of insurance the moral risk involved is regarded as of very great importance, and it cannot be said that an insurance company has not the right by its contract to make the questions which are here adverted to essential."

The judgment is reversed, with a new trial and with costs of this court to defendant.

SNOW, STEERE, WIEST, and CLARK, JJ., concurred with FELLOWS, J.