RESERVE LOAN LIFE INSURANCE COMPANY *v.* SUMNER.

[No. 9,905. Filed June 6, 1919.]

1. PLEADING.—*Motion to Strike Out.*—*Office of.*—If a pleading is a proper one to be filed and is timely filed, a motion to strike out should not be sustained, and, if such pleading is insufficient, it should be demurred to, so that the pleader may have an opportunity to correct the fault thereof. p. 477.

2. INSURANCE.—*Life Insurance.*—*Surrender of Policy.*—*Consent of Beneficiary.*—Under a life policy providing that insured would be paid the cash surrender value of the policy, under certain conditions, on a full and valid surrender of the policy being made by insured, the beneficiary named in the policy is a necessary party to such surrender. p. 479.

3. INSURANCE.—*Life Insurance.—Action for Cash Surrender Value.
—Breach of Policy Conditions.—Failure to Surrender Policy.—
Statutes.*—In view of §4622a, cl. 10, Burns 1914, Acts 1909 p. 251,
providing for extended insurance upon default in premium pay-
ment after three years, or payment of cash surrender value upon
surrender of the policy by insured at the company's home office,
and a clause in the policy stipulating for payment of cash value
upon default and "a full and valid surrender" of the policy, a let-
ter by insured to the insurer notifying it that he elected to pay
no further premiums, and desired payment of the cash surrender
value due on the policy, without actually surrendering the policy,
was insufficient. p. 480.

4. APPEAL.—*Briefs.—Waiver of Error.*—Where appellant failed to
mention, under the points and authorities in its brief, any of the
instructions tendered by it and refused, error, if any, in such
refusal is waived. p. 480.

5. INSURANCE.—*Life Insurance.—Action for Cash Surrender Value
of Policy.—Instructions.*—In an action against an insurance com-
pany for the cash surrender value of a life insurance policy which
required a "surrender of the policy and all claims hereunder" as
a condition precedent to insured's obtaining such cash surrender
value, an instruction that before insured was entitled to the sur-
render value of the policy, he must have made such a complete
and definite surrender of the policy as that he had no further
interest or claims against the defendant by reason of the policy,
was erroneous, since it did not measure the rights of insured by
the terms of the contract. p. 481.

6. INSURANCE.—*Life Insurance.—Action for Cash Surrender Value
of Policy.—Instructions.*—In an action by insured against an in-
surance company to recover the cash surrender value of a life
insurance policy which required a full and valid surrender of the
policy and all claims thereunder as a condition precedent to in-
sured's obtaining such cash surrender value, an instruction that,
if insured offered to surrender the policy and such offer was sub-
ject to a suggestion of defendant as to what to do with the policy,
and insured was not so advised, the insurer would be liable, was
erroneous as not limiting the rights of insured to those acquired
under the policy. p. 481.

7. INSURANCE.—*Life Insurance.—Action for Cash Surrender Value
of Policy.—Policy Conditions.—Compliance.—Written Request.*—
Where a life insurance policy provided for the payment of the
cash surrender value of the policy upon receipt of a written re-
quest from insured, an instruction that the deposit in the mail of
a letter properly stamped and addressed and containing such re-

quest, was sufficient, was erroneous as altering the rights given insured under the contract. p. 482.

8.  EVIDENCE.—*Admissibility.*—*Contents of Letter.*—*Oral Testimony After Notice to Produce.*—It was not error for the trial court to permit plaintiff to testify as to the contents of a letter alleged to have been written by him to defendant, where the record shows that timely notice had been served on defendant to produce the same. p. 483.

From Pike Circuit Court; *John L. Bretz,* Judge.

Action by Millard Filmore Sumner against the Reserve Loan Life Insurance Company. From a judgment for plaintiff, the defendant appeals. *Reversed.*

*Guilford A. Deitch, Frank G. West* and *D. D. Corn,* for appellant.

*Ely & Ely, J. L. Sumner* and *Frank Ely,* for appellee.

ENLOE, J.—This was an action by appellee against appellant to recover the alleged cash surrender value of a policy of life insurance, issued by appellant company, upon the life of the appellee, and payable in case of the death of the insured while said policy was in force, to Amanda Sumner, wife of the insured.

The complaint was in one paragraph, the material averments of which were in substance as follows: That, July 8, 1911, the appellee entered into a contract of insurance with the appellant, by the terms whereof the appellant promised to pay to Amanda Sumner, wife of appellee, the sum of $5,000 in case of the death of appellee; that said contract and policy of insurance provided, among other things:

"That at any time after two annual premiums have been paid hereon, and within one month from date of default in payment of any premium,

the company will, within ninety days after receipt of written request by the insured, with a full and valid surrender of this policy and all claims hereunder, pay a cash surrender value as indicated in the table of guaranteed value (plus the value of the reserve, of any dividend addition), opposite the number of years for which annual premiums have been paid.''

That appellee agreed to pay appellant for said contract and policy of insurance the sum of $266.45 a year for each and every year said policy was in force, unless appellee elected to avail himself of said cash surrender value at any premium paying time; that appellee paid appellant the annual premium due on said policy for the years 1911, 1912 and 1913; that on July 8, 1914, said contract of insurance and policy had a cash surrender value of $255, as shown by the table of guaranteed values in said contract and policy of insurance; that within less than one month from and after July 8, 1914, appellee elected to cease paying further premiums on said policy, and elected to avail himself of the cash surrender value due to him, on and by virtue of the terms of said policy, on said date, to wit, said sum of $255; ''that within less than one month from said 8th day of July, 1914, the plaintiff, in writing, notified defendant that he had elected to pay no further premiums on said policy; that he wished and desired them to pay to him the cash surrender value then due on the policy, to wit, said $255.00, and that he did not wish to carry said policy any longer; for said defendant to send to him said cash surrender value thereon, and to notify him, the plaintiff, what to do with said policy, and for defendant to consider said policy canceled''; that appel-

lant has refused to pay, etc., and that there has been an unreasonable delay, etc.

To this complaint appellant unsuccessfully demurred. It then filed its answer in five paragraphs: (1) General denial; (2) payment; (3) that the provision of the policy stipulating the manner in which the cash surrender value thereof might have been obtained had not been complied with, and that said policy had been continued in force as "extended" insurance, as required by statute (Acts 1909 p. 251); (4) the failure of appellee to comply with provision of policy relating to obtaining cash surrender value thereof and matter of estoppel; (5) averring that, although appellee did write a letter to appellant within thirty days after default in reference to the cash surrender value of said policy, he did not surrender said policy as required by law and by the terms of said policy, but abandoned said alleged election, and received from appellant full consideration for said policy in the form of extended insurance.

Upon motion of appellee, appellant's third, fourth and fifth paragraphs of answer were stricken from the files, and reply in general denial by appellee to the second paragraph of answer closed the issues. Upon the issues thus formed the cause was submitted to a jury for trial, which returned a verdict for appellee in the sum of $279.86.

The errors assigned and relied upon for a reversal are: (1) Error in overruling demurrer to complaint; (2) error in sustaining motion to strike third paragraph of answer from the files; (3) error in sustaining motion to strike fourth and fifth paragraphs of answer from the files; (4) error in overruling motion for new trial.

While in the view we take of this case the second and third assigned errors are of no controlling influence, we will notice them.

It has been held that a motion to strike a pleading from the files cannot perform the office of a demurrer.

1. If a pleading is a proper pleading to be filed, and is timely filed, a motion to strike out the same should not be sustained. If such pleading is insufficient, it should be demurred to, so that the pleader may have an opportunity to correct the fault thereof. *Burk, Exr.,* v. *Taylor* (1885), 103 Ind. 399, 3 N. E. 129.

In *Mabin* v. *Webster* (1891); 129 Ind. 430, 28 N. E. 863, 28 Am. St. 199, it is said: "The third paragraph of answer was an attempt to plead a rescission of the marriage contract. The question as to whether or not it is properly pleaded so as to withstand a demurrer is not before us. A motion to strike out admits the truth of all the facts well pleaded for the purpose of the motion, and the motion should not be sustained if the facts stated in the paragraph are relevant or pertinent to the question to which they are addressed, though not sufficient to withstand a demurrer."

The second and third assignments are well taken.

Section 4622a, subd. 10, Burns 1914, Acts 1909 p. 251, provides: "That in the event of the default of premium payment, after premiums have been paid for not less than three years, the insured shall be entitled to the extended insurance shown in the table of values and options for the end of the last year for which full annual premiums have been paid: * * * Provided, That the policy may be surrendered to the company at its home office within one month from date of default for a specified cash value at least equal

to the sum which would otherwise be available for the purchase of extended insurance as aforesaid; and, Provided, further, that the company may defer payment for not more than six months after application therefor is made * * *.''

The above statute, enacted in 1909 (Acts 1909 p. 251), required of all Indiana life insurance companies that they insert the above condition in all policies thereafter issued, and accordingly we find in the policy in suit the following:

"That at any time after two annual premiums have been paid hereon, and within one month from the date of default in payment of any premium, the company will, within ninety days *after receipt of written request by the insured, with a full and valid surrender of this policy, and all claims hereunder*, pay a cash surrender value as indicated in the table of guaranteed values (plus the value of the reserve on any dividend additions) opposite the number of years for which annual premiums have been paid." (Our italics.)

Under the provisions of the above quoted statute, upon a default in payment of an annual premium by the insured, three annual payments having been made, two courses were open to the insured under the terms of his policy, viz., he could avail himself of the provisions for a "cash surrender," or he could have the extended insurance. The first came to him by his choosing it; the second came to him by force of the statute, in case he did not avail himself of his right to take the "cash surrender" value. To avail himself of the one required him, the insured, to act; while he would receive the benefit of the other without any act in that behalf on his part.

If the agreement as to the cash surrender value and canceling of said policy, ás contained in said policy, was not in conflict with the statute above referred to, and appellee by basing this suit thereon affirms its validity, then such agreement is the measure of the rights of the parties to this controversy. It is their contract, and the courts have no right to change or modify it, or engraft other conditions or limitations thereon.

To avail himself of this privilege of obtaining the "cash surrender" value of the policy, the statute in question provides that *"the policy may be surrendered to the company at its home office within one month,"* and the contract upon which this suit was based provided, "After receipt of written request by the insured, *with a full and valid surrender of this policy,"* etc.

It will also be noted that the wife of the insured, Amanda Sumner, was the beneficiary named in this policy of insurance, and under the law of this state, as declared in the case of *Indiana, etc., Life Ins. Co.* v. *McGinnis* (1913), 180 Ind. 9, 101 N. E. 289, 45 L. R. A. (N. S.) 192, the appellee herein had no power to cancel said policy of insurance by contract with appellant, unless his wife, the named beneficiary, should voluntarily surrender said policy and her interest therein, and thereby permit the same to be canceled. In view of the law, as disclosed in the McGinn's case, *supra,* the force, effect and importance of the language of the policy, "with a full and valid surrender of this policy," becomes at once apparent. It was the *vital things* to be done by the insured, so far as the protection of the company writing the policy was concerned.

Do the averments of the complaint measure up to this standard, and show that appellee did the things required of him?

He alleges in his complaint that "the plaintiff in writing notified defendant that he had elected to pay no further premiums on said policy; that he wished and desired them to pay him the cash surrender value then due on the policy; * * * that he did not wish to carry said policy any longer; for said defendant to send to him the cash surrender value due thereon, and to notify him, the plaintiff, what to do with said policy, and for said defendant to consider said policy cancelled." This was not sufficient. This was not a "full and valid surrender of this policy and all claims herein," as required by the contract. The complaint therefore was insufficient, and the demurrer thereto should have been sustained.

The appellant also complains of the action of the trial court in overruling its motion for a new trial.

The reasons assigned for a new trial in appellant's motion therefor are as follows: (1) That the verdict is not sustained by sufficient evidence; (2) that the verdict is contrary to law; (3) and (4) error in admitting certain evidence offered by appellee; (5) error in refusing to give certain instructions requested by appellant; and (6) error in giving certain instructions of the court's own motion.

Appellant, by its failure to mention under "points and authorities" in its brief any of the instructions tendered by it and refused, has waived the error of court, if any was committed in such refusal, and said instructions will not therefore be considered.

Appellant complains of the third, fourth and fifth instructions, as given by the court, and we will notice them in their order.

The third instruction is erroneous. The latter part of said instruction, which is an attempted explanation of the preceding part of said instruction, is as follows: "In other words, before he is entitled to surrender value of the policy, he must, by words or actions make such a complete and definite surrender of the policy to defendant as that he has no further interest or claims against the defendant, by reason of the policy." , This instruction, in effect, told the jury that the contract or policy was not the measure of the respective rights and duties of the parties. Under this instruction, the appellee could declare the policy canceled, and maintain thereafter an action for the cash surrender value thereof, notwithstanding the interest of his wife, the named beneficiary, had in no way been affected by such declaration of her husband, the appellee. The contract required a *"surrender of the policy and all claims herein"* (our italics), and this was the measure of appellee's duty in that behalf, if he would claim the cash for its surrender.

The fourth instruction given to the jury concluded as follows: "On the other hand, if he has shown by a preponderance of the evidence that within the time stated he *offered to surrender* (our italics), and that offer to surrender was subject to a suggestion of the defendant what to do with the policy, and they did not advise him, then I instruct you, if all of the other essential and material allegations have been made out by a preponderance of the evidence, he would be entitled to recover at your hands."

This instruction is subject to the same criticism as No. 3 above. It did not limit the right of appellee to those acquired under the terms of his contract.

The fifth instruction given by the court is also erroneous. In it the jury were told, among other things:

7.    "If you find by a preponderance of the evidence, that such a letter as contended for, containing such statements as contended for, was sent by the plaintiff to the defendant insurance company, and that said letter was properly addressed, sealed and stamped and placed in the United States mail, that would be all that would be required of this plaintiff to do in order to avail himself of that clause in the policy, which authorizes a surrender value thereof. He is not required to show that the company actually received it, but he must show that he properly mailed and addressed a letter containing such statements to the defendant. If you find from a preponderance of the evidence heretofore referred to, that the defendant company took no action, or made no answer thereto, then I instruct you in law that such statements in said letter, if true, were in law sufficient to constitute a surrender of the policy, and a request of the defendant company to pay to plaintiff the surrender value thereof."

This instruction was directed to the testimony of appellee, who had testified in substance that, on August 5, 1914, he had written the appellant a letter stating that "I would forfeit my policy and take the cash value of it, and for them to notify me what to do with the policy. I enclosed it in an envelope addressed to the company and put a two-cent stamp on it, and put it in the mail box, and never saw it afterwards."

The clause in the policy provided "upon receipt of

written request," etc., but this instruction would turn this condition into one reading, "upon the *mailing* to us of written request," etc. In other words, the condition in the policy required actual notice in writing to appellant, while the instruction would hold the appellant liable, if such notice were mailed to appellant, whether it in fact ever received such notice or not.

To hold the foregoing instruction correct would be in effect to hold that the courts have the power to alter and change the contract as made by the parties; to engraft thereon terms and conditions which the parties did not have in mind, and place therein. If courts could thus change the contract as made by the parties, then the making of contracts would be useless. Courts have no such authority. See *Fields* v. *United Brotherhood, etc.* (1895), 60 Ill. App. 258, and authorities there cited.

Appellants also insist that the court committed error in permitting the appellee to testify as to the contents of a certain letter alleged to have 8. been written by him, but under the showing made in this record we hold that the court did not err in permitting said witness to testify as to contents of said letter, notice having been timely served upon appellant to produce the same. Other assigned errors need not be noticed.

The judgment is reversed, with directions to the trial court to sustain appellant's motion for a new trial; also to sustain appellant's demurrer to the complaint, and for further proceedings not inconsistent herewith.